# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3649

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Gerald Grant, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 13, 2007
Filed: July 13, 2007

———————

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Gerald Grant was charged in a two-count indictment with possessing child pornography, 18 U.S.C. § 2252(a)(4)(B), and criminal forfeiture, id. § 2253. After the District Court[1] denied Grant's motion to suppress evidence obtained pursuant to a search warrant, he entered a conditional guilty plea and reserved the right to appeal the denial of his motion to suppress. The District Court then sentenced Grant to twenty-seven months' imprisonment and three years' supervised release. Grant appeals the denial of his motion to suppress. We affirm.

———————

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

After the grand jury returned an indictment charging Grant with possession of child pornography, Grant filed a motion to suppress the evidence discovered when a warrant to search his computer was executed. In his motion to suppress, Grant argued that the affidavit in support of the search-warrant application failed to establish probable cause to issue the warrant and that the <u>Leon</u>[2] good-faith exception to the exclusionary rule did not stretch far enough to encompass this case. The magistrate judge, after considering briefs filed by the parties—but without conducting an evidentiary hearing—recommended to the District Court that Grant's motion to suppress be granted. The government objected to the magistrate judge's recommendation, and the District Court entered an order directing the magistrate judge to conduct an evidentiary hearing and supplement the earlier recommendation. Specifically, the District Court directed the magistrate judge "to make findings under <u>Leon</u> why a reasonable police officer standing in the shoes of [the officer executing the search warrant] would not have reasonably understood that the words 'child pornography' . . . referred to 'child pornography' within the meaning of" the applicable state statutes. Mem. & Order, March 13, 2006, at 2.

The magistrate judge then held a suppression hearing at which the only witness to testify was Investigator Gary Eng, the Nebraska State Patrol officer who obtained and executed the search warrant. Eng testified that in September 2003, a Deputy Sheriff contacted him to report that the owner of a computer-repair business had telephoned the Sheriff's office to report the discovery of child pornography on a home computer. The next day, Eng met with the business owner, Tracey Sundstrom, who related to Eng that Grant's wife Marshia had delivered the couple's home computer to Sundstrom's business for repair.[3] One of Sundstrom's computer technicians, David Lewis, had reported to her that when he began to work on the computer, he discovered

---

[2]<u>United States v. Leon</u>, 468 U.S. 897 (1984).

[3]As noted by the District Court, Grant admitted in his motion to suppress that the computer searched pursuant to the warrant was the couple's home computer.

what he believed to be child pornography. Lewis was not working on the day Eng interviewed Sundstrom; Sundstrom therefore relayed to Eng the information she had received from Lewis.

Sundstrom told Eng that Lewis had observed pornographic images while repairing other computers, but that Lewis had stated that the images he discovered on the Grants' computer were unusual and disturbing. Specifically, Sundstrom told Eng that "in the past [Lewis] had found adult pornography while repairing other individuals' computers and that this was different. This was . . . clearly different; it was child pornography." Ev. Hrg. Tr. at 7. In addition, Sundstrom reported that Grant had informed Lewis that there were "raunchy pictures" on the computer and that Grant wanted those pictures saved. Id. at 13. Sundstrom told Eng that the Grants had telephoned the shop at least once to inquire about progress on the repairs to their computer. Sundstrom also told Eng that she felt a legal obligation to report her suspicions regarding the images on the Grants' computer and that she understood her business could be held liable if she neglected to contact law enforcement to report discovery of suspected child pornography.

Eng further testified at the suppression hearing that he was familiar with the meaning of "child pornography" under Nebraska's Child Pornography Prevention Act, Neb. Rev. Stat. §§ 28-1463.01 to .05 (the Act), and that there was nothing in his conversation with Sundstrom that would have indicated to him that Sundstrom was referring to images that would not be covered under the Act. As far as Eng was concerned, "when [Sundstrom] said child pornography . . . it [met] the definition legally of child pornography under the State statute." Ev. Hrg. Tr. at 26. Eng testified that although he discussed the matter with Sundstrom at some length, Sundstrom did not offer to show Eng any of the images found on the Grants' computer nor did Eng make a specific request to view the images. Rather, Eng believed that he should obtain a search warrant before viewing any of the images on the Grants' computer.

-3-

Based on his interview of Sundstrom, Eng was concerned that the Grants could retrieve their computer from the repair shop at any time, and he thus prepared an affidavit and application for a search warrant later that same day. In his affidavit, Eng briefly described his law-enforcement experience and indicated that he was aware that state statutes prohibited the possession of child pornography on home computers. Eng summarized the information he had gathered from Sundstrom, specifically pointing out that Sundstrom had told him that "Lewis had been a Computer technician for a long time and ha[d] worked on several home computer[s]" and that Lewis had "found pornography on several computers but believe[d] that what he found on the [Grants'] computer to be child pornography." Aff. at 1.

Later that day, Eng went to the Lincoln County, Nebraska, courthouse and asked to see Judge Turnbull, a judge from whom Eng had obtained search warrants in past investigations. Eng testified that in one of these earlier investigations, Judge Turnbull had rejected Eng's affidavit and search-warrant application and had requested additional information before issuing the search warrant. On this occasion, however, after Eng was sworn in, Judge Turnbull reviewed Eng's affidavit, obtained confirmation from Eng that the facts as stated in the affidavit were true, and issued the search warrant for the Grants' computer. Judge Turnbull did not inquire about Eng's understanding of the term "child pornography" as used by Eng in his affidavit, nor did Judge Turnbull inquire about the possibility of viewing images taken from the computer before deciding whether or not to grant the search-warrant application. After Eng obtained the search warrant, he returned to the repair shop and seized the Grants' computer.

At the conclusion of the suppression hearing, the magistrate judge issued a supplemental recommendation that the District Court suppress the evidence from the Grants' computer. The government again objected to this recommendation. The District Court rejected the magistrate judge's supplemental recommendation and denied Grant's motion to suppress. In its order, the District Court first observed that

Grant had "failed to prove that he had a reasonable expectation of privacy in the images that were viewed by" Lewis.[4] Mem. & Order, May 24, 2006, at 16. The court also determined that because an experienced computer technician had personally observed the "child pornography" on the Grants' computer and had specifically distinguished those images from the adult pornography he had seen on other computers, the "affidavit was sufficient to establish that there was a fair probability that child pornography would be found" on the Grants' computer. Id. at 19. Accordingly, the District Court determined that Eng's affidavit established the probable cause necessary to support issuance of the warrant to search the Grants' computer. Finally, the District Court noted that even if the affidavit was insufficient to establish probable cause, the good-faith exception described in Leon applied in these circumstances to justify Eng's reliance on the search warrant. After his motion to suppress was denied, Grant entered his conditional guilty plea and was sentenced.

Grant now appeals the District Court's denial of his motion to suppress, arguing that Eng's affidavit in support of the search warrant was insufficient to establish probable cause for Judge Turnbull to issue the warrant. Grant also argues that Judge Turnbull "abandon[ed] his role as a neutral arbiter" by relying on an affidavit that was "wholly lacking in probable cause." Br. of Appellant at 8. Therefore, according to Grant, the Leon good-faith exception cannot save the search of his computer. On appeal from the denial of a motion to suppress, we review a district court's findings of fact for clear error, and we review the court's legal conclusions—including its determination of probable cause and application of the Leon exception—de novo. United States v. McCoy, 483 F.3d 862, 863 (8th Cir. 2007).

Grant contends there was not probable cause for Judge Turnbull to issue the search warrant because Eng's affidavit in support of the warrant was factually

---

[4]We will assume only for the sake of discussion that Grant had a reasonable expectation of privacy in the contents of the computer.

insufficient and constituted nothing more than a "bare bones affidavit." Br. of Appellant at 8. We disagree. If an affidavit in support of a search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established. United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge "'should be paid great deference by reviewing courts.'" Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). Accordingly, we examine the sufficiency of a search-warrant affidavit using a "'common sense'" and not a "'hypertechnical'" approach. United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)).

In this case, Sundstrom, a neutral third party, volunteered information to Eng that led Eng to believe that child pornography would be found on the Grants' computer. In addition, Lewis, an experienced computer-repair technician, personally observed the images on the Grants' computer and, specifically distinguishing those images from the "adult pornography" he had seen on other computers, concluded that the images on the Grants' computer were child pornography. As an experienced law-enforcement officer, Eng was familiar with the statutory meaning of "child pornography." Eng recounted this information in his affidavit and presented it to Judge Turnbull, who found that the information in the affidavit was sufficient to justify issuing a warrant to search for "child pornography" on the Grants' computer.

We agree with the District Court that Lewis, by virtue of his experience as a computer repairman, was "uniquely able, and properly motivated, to distinguish between child pornography and lawful images." Mem. & Order, May 24, 2006, at 20. Sundstrom emphasized to Eng that the images Lewis stated that he had observed on

-6-

the Grants' computer were disturbing and unlike any pornographic images Lewis had observed on computers in the past. Lewis distinguished between "adult" and "child" pornography and specifically characterized the images on the Grants' computer as child pornography. See e.g., United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993) ("Most minors look like minors and most adults look like adults . . . ."). Eng's affidavit in support of the search warrant related each of these facts to Judge Turnbull, and we conclude that the affidavit was sufficient to establish probable cause for the issuance of the search warrant.

But even if the affidavit was insufficient to establish probable cause, the Leon good-faith exception applies in these circumstances to authorize admission of the evidence. Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. 468 U.S. at 922. In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, United States v. Chambers, 987 F.2d 1331, 1335 (8th Cir. 1993), and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization," Leon, 468 U.S. at 922 n.23.

The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably

presume the warrant to be valid.  Id. at 923 (citations and quotations omitted); see United States v. Puckett, 466 F.3d 626, 630 (8th Cir. 2006).

Grant first argues that the exception should not apply to the search of his computer because the affidavit in support of the search warrant was completely lacking in indicia of probable cause, thus making it entirely unreasonable for Eng to believe that probable cause existed.  Grant contends that because Eng did not personally observe the images that Lewis and Sundstrom concluded were child pornography, did not include detailed descriptions of these images in his affidavit, and did not otherwise corroborate that the images were in fact "child pornography" as defined in the applicable statutes, Eng's affidavit amounted to nothing more than "the bare conclusions of a concerned citizen" that child pornography had been found on the computer.  Br. of Appellant at 19.  Grant therefore concludes that it was not objectively reasonable for Eng to rely on the validity of a search warrant issued pursuant to this fatally deficient affidavit.

As recounted above, Lewis made a distinction between "adult" and "child" pornography and described the images he had seen on the Grants' computer as child pornography.  Sundstrom, a concerned citizen who felt a legal obligation to report what she believed was a crime, relayed this information to Eng.  In addition, Eng learned that Grant himself told Lewis that the computer held "raunchy" images he wanted Lewis to save.  Although some of this information was omitted from Eng's affidavit, Eng was aware of the information and his knowledge factors into our assessment of whether his reliance on the warrant was objectively reasonable.  See United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) (observing that when we assess whether an officer's reliance on a warrant was objectively reasonable, we consider the totality of the circumstances, including information known to the officer executing the warrant but not presented to the issuing judge).  Moreover, Eng acted prudently in the face of circumstances he reasonably perceived to be urgent.  Sundstrom informed Eng that the Grants had placed more than one call to the repair

-8-

shop inquiring about the progress on repairs to their computer. Armed with this knowledge, Eng believed that the evidence would be lost if he did not act quickly to secure a search warrant. The District Court specifically found that Eng's decision to seek a search warrant "is the antithesis of bad faith, and extremely strong evidence of objective good faith." Mem. & Order, May 24, 2006, at 22. We agree and conclude that Eng's affidavit was not "so lacking in indicia of probable cause as to render [his] belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (citations and quotations omitted).

Grant also argues that the Leon good-faith exception should not apply because Judge Turnbull "wholly abandoned his judicial role" and instead acted as a "rubber stamp" when Judge Turnbull issued the warrant to search the Grants' computer. Br. of Appellant at 17. We disagree. In the past, Judge Turnbull had rejected as insufficient an affidavit and application for a search warrant presented by Eng. Eng therefore had every reason to believe that if his affidavit and application for a warrant to search the Grants' computer were inadequate, Judge Turnbull would have refused to issue the warrant and that if Judge Turnbull issued the warrant, Eng's affidavit and application were sufficient to establish probable cause. Grant has presented no evidence to suggest that Judge Turnbull issued the search warrant in this case without appropriately performing his judicial role. We therefore conclude that Eng's reliance on the validity of the search warrant was objectively reasonable as required for application of the Leon good-faith exception.

We are satisfied that the District Court properly denied Grant's motion to suppress the evidence seized from his computer. We therefore affirm the judgment of the District Court.

ARNOLD, Circuit Judge, dissenting.

I respectfully disagree with the court's conclusion that there was no fourth amendment violation here and that the evidence objected to should not have been suppressed. I believe that there was no probable cause to issue a warrant and that it was not reasonable for Mr. Eng to think that there was.

"A search warrant is proper (*i.e.*, is supported by probable cause) if the evidence as a whole creates a reasonable probability that the search will lead to the discovery of evidence." *United States v. Chipps*, 410 F.3d 438, 443 (8th Cir. 2005) (internal quotation marks and citation omitted). The Supreme Court has said that while courts should use a "flexible, common-sense standard" for probable cause," 'bare bones' affidavits" are insufficient. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). For instance, an affidavit stating that " 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home" is insufficient to establish probable cause after *Gates*. *Id.* (citing *Aguilar v. Texas*, 378 U.S. 108 (1964)).

The affidavit in this case provides no detail with respect to what Mr. Lewis actually saw. The only information in the affidavit about the images is as follows: "Sundstrom advised Lewis had been a Computer technician for a long time and has worked on several home computer processing units. Sundstrom advised Lewis has found pornography on several computers but believes that what he found on the Grant's [sic] computer to be child pornography." The sum of this information is insufficient to support the issuance of a search warrant because it is too conclusory and because it is hearsay.

I am unable to join the court's assertion that Mr. Lewis was uniquely able to distinguish between child pornography and lawful images due to his experience as a computer repairman. We have no information whatever to indicate that Mr. Lewis had any expertise in what constitutes child pornography. We know only that Ms.

-10-

Sundstrom said that he said that he had previously found pornography on customers' computers and did not think that it was child pornography. There is also no evidence that Mr. Lewis knew the legal definition of child pornography. Indeed, we do not even know what Mr. Lewis saw because he never provided any description of it and Mr. Eng did not speak to him at all. All there is in this case, as reflected by the affidavit, is that a computer technician told his supervisor who then told Mr. Eng that there was what the computer technician believed to be child pornography on a customer's computer. The court's statement that, as an experienced law-enforcement officer, Mr. Eng was familiar with the statutory meaning of "child pornography" is of uncertain relevance: Mr. Eng did not see any of the images and would thus have no basis to conclude whether they met the statutory definition or not.

A look at *United States v. Koelling*, 992 F.2d 817 (8th Cir. 1993), on which the court relies, is instructive. There the affiant had personally seen pictures containing child pornography and was a postal inspector who had dealt with many child pornography investigations over the years. *Id.* at 818-19. The affiant also provided details as to what exactly the relevant images depicted rather than just using the conclusory phrase "child pornography" to describe their content. *Id.* at 819. This affidavit contained non-hearsay statements and specific factual recitations, which distinguishes it significantly from Mr. Eng's affidavit.

I also do not think on balance that Mr. Eng is entitled to the benefit of the so-called *Leon* good-faith exception. As I have already said, the affidavit lacks the information necessary to establish the existence of probable cause. The affidavit was based solely on hearsay information and contained no detail as to what Mr. Lewis saw. The fact that Mr. Eng heard from Ms. Sundstrom that Mr. Grant described the images as "raunchy" to Mr. Lewis is not only double hearsay, it is virtually irrelevant because the term "raunchy" could apply to any number of things, including legal adult pornography. Though the question is close, and its answer requires making a difficult

judgment, I conclude that it was unreasonable for an officer to believe that the affidavit in this case was sufficient.

The court lauds Mr. Eng for seeking a search warrant and endorses the district court's finding that doing so was the "antithesis of bad faith, and extremely strong evidence of good faith." But the fact that Mr. Eng sought a warrant is not relevant to the question of whether the affidavit could reasonably have been regarded as establishing probable cause. Assuming, even, that Mr. Eng faced exigent circumstances, which the court asserts he did and which I deny, that fact has no impact on the question of whether it was reasonable to think that the affidavit created a reasonable probability that a search of the computer would reveal child pornography. The affidavit stands on its own, whatever Mr. Eng's motives may have been, and its objective sufficiency is entirely distinct from his subjective state of mind. I don't think that Mr. Eng's motives were bad, I simply think that it was objectively unreasonable for him to rely on the affidavit as it stood to obtain a search warrant.

For the reasons given, I would reverse the judgment of the district court.

_____