# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1085

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Luis Escota Moya

*Defendant - Appellant*

_____

No. 12-1173

_____

United States of America

*Plaintiff - Appellee*

v.

Silas Roynel Swift

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Silas Roynel Swift and Jose Luis Escota Moya of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute meth in violation of 21 U.S.C. §§ 841(a)(1) and 846. Swift argues the district court[1] erred in admitting evidence from a search warrant of his residence; both he and Escota Moya assert there was insufficient evidence to convict them. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

This court states the facts most favorably to the jury's verdict. ***United States v. Hudspeth***, 525 F.3d 667, 671 (8th Cir. 2008).

After a confidential informant purchased meth from Michael Dewayne Dawson, officers obtained a warrant for his mobile home in Batesville, Arkansas. Arriving, officers heard someone clamoring to exit the back of the home, and immediately found Dawson and Swift. Officers seized a large amount of crystal meth in a gallon-sized bag hidden behind the dryer. Obtaining a warrant for Swift's house, officers seized $16,000 in cash from a heater vent pipe there. Swift admitted selling meth, telling officers he bought pound quantities from a Hispanic man who lived in a farmhouse on Tahkodah Road. Police placed the farmhouse under surveillance and

_____

[1] The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

stopped a car leaving the farmhouse. They recovered three pounds of meth from the car and arrested the driver. Officers obtained a warrant for the farmhouse and stopped a blue truck regularly seen leaving the farm. The passenger, Escota Moya, had 11 grams of meth on him, which he admitted was his. Officers recovered meth-making materials and 12 firearms in the farmhouse. Escota Moya told officers he lived there and that the weapons were his.

Swift moved to suppress, arguing the warrant for his house lacked information necessary to establish probable cause to believe evidence of drug trafficking would be there. The district court agreed, but ruled that the officers executed the warrant in good faith under *United States v. Leon*. 468 U.S. 897, 922 (1984) (holding that evidence may be admitted if officers act in objectively reasonable, good faith reliance upon issued warrants). The court decided that the evidence from Swift's house was admissible at trial. This evidence included a photograph of the $16,000 found in the heater vent pipe and officers' testimony about finding that money.

During the four-day jury trial, Escota Moya stipulated that guns seized at the farmhouse were his and that he possessed the two grams of meth found on him. Witnesses testified about Swift's and Escota Moya's drug dealing and Escota Moya's meth production. The jury convicted them of conspiracy and possession. (Escota Moya was also convicted of illegally possessing firearms). Escota Moya was sentenced to 200 months' imprisonment, and Swift to 176 months.

I.

Swift argues that the district court should have suppressed the evidence from the search of his house after finding the warrant lacked probable cause.[2] Reviewing

---

[2] Swift relies on several Arkansas state cases and rules to support his argument for suppression. These state cases "not only do not bind this court, but also do not support [Swift's] theory." **Starr v. Mandanici**, 152 F.3d 741, 749 n.22 (8th Cir. 1998).

the district court's denial of a motion to suppress, this court reviews findings of fact for clear error and legal conclusions de novo. *Hudspeth*, 525 F.3d at 671, *citing United States v. Grant,* 490 F.3d 627, 631 (8th Cir. 2007). Specifically, this court reviews de novo the district court's application of the *Leon* exception. *Id. See generally Leon,* 468 U.S. at 922.

"Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Hudspeth*, 525 F.3d at 676, *quoting Grant,* 490 F.3d at 632. The officer must act with objective good faith and within the scope of the search warrant. *United States v. Strand*, 761 F.2d 449, 456 (8th Cir. 1985). "In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, and we confine our inquiry to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Grant*, 490 F.3d at 632 (internal quotation marks and citations omitted). An officer and an issuing judge may infer that evidence of drug trafficking exists at the home of a person arrested in possession of drugs with intent to distribute. "Although we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007).

The *Leon* good-faith exception applies here. Based on the affidavits, a reasonably well-trained officer would not have known that the search was illegal despite the issuing judges' authorization. *See Hudspeth*, 525 F.3d at 676. The

affidavit indicated that law enforcement had information that Swift was distributing meth in the area (supported by seizure of two pounds of meth connected to Swift earlier that day). "As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common sense appeal of this inference, and its acceptance by the issuing magistrate, it was not entirely unreasonable for [the officer] to believe the inference to be permissible." *United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003) (affirming the district court's determination that an officer's good faith reliance on the search warrant was appropriate under *Leon*). It was not unreasonable for the state judge to infer that evidence would be at Swift's house, so the officer reasonably believed the evidence in the affidavit established probable cause. Reliance on the search warrant was objectively reasonable, and there is no evidence the officer acted in bad faith.

The district court did not err in denying the motion to suppress.

II.

Both Swift and Escota Moya argue that there was insufficient evidence to convict them of conspiracy to possess with intent to distribute. This court reviews de novo challenges to the sufficiency of the evidence, viewing the facts most favorably to the verdict and accepting all reasonable inferences that it. This court must uphold the verdict "if a reasonable-minded jury could find guilt beyond a reasonable doubt, even if the evidence does not exclude all other possibilities." *United States v. McMurray*, 34 F.3d 1405, 1412 (8th Cir. 1994). "This court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict." *United States v. Aldridge,* 664 F.3d 705, 715 (8th Cir. 2011) (citations omitted).

To prove a conspiracy, the government must show that (1) a conspiracy existed, (2) that Swift and Escota Moya each was aware of the conspiracy and its purpose, and (3) that Swift and Escota Moya each knowingly joined the conspiracy. *United States v. Rolon-Ramos*, 502 F.3d 750, 754 (8th Cir. 2007). "The conspiracy's existence may be proved by direct or circumstantial evidence." *Id.*, *citing United States v. Cain*, 487 F.3d 1108, 1111 (8th Cir. 2007)). "[A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006). "The agreement need not be formal; a tacit understanding will suffice." *United States v. McCarthy*, 97 F.3d 1562, 1568 (8th Cir. 1996), *citing United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). "The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy. . . ." *United States v. Prieskorn*, 658 F.2d 631, 634 (8th Cir. 1981); *see also United States v. Jensen*, 141 F.3d 830, 833 (8th Cir. 1998). However, a large quantity of drugs, rather than amounts consistent with personal use, supports an inference that the defendant knew "he was part of a larger venture that extended beyond his participation." *Id.* at 634-35 (internal citation omitted). The existence of a conspiracy is also shown through evidence of an ongoing relationship the purpose of which is buying and selling drugs. *Id.*

At trial, co-conspirators Dawson, Adali Nieto Mendoza, Ricardo Garza and Michael Christopher testified. The government also presented physical evidence linking Swift and Escota Moya to these men and to the crime of distributing meth. The testimony to the jury established that Swift sold meth to Dawson, who sold it to others. According to witnesses, Garza introduced Swift to Nieto Mendoza so Swift could buy meth from him to resell. Nieto Mendoza testified that he sold the meth to Swift, who then sold it to others as planned. The jury heard that Nieto Mendoza introduced Swift to Escota Moya so Swift could buy meth from Escota Moya to resell. Escota Moya sold meth to Swift, which Swift sold to others. Escota Moya

-6-

produced meth at the Tahkodah farmhouse for the purpose of distributing it to Swift and the others. The government presented physical evidence of controlled buys from Nieto Mendoza and others. The jury also heard that after Swift's arrest on September 29, 2009, he told the investigator that he was distributing meth, that he paid $15,000 to $16,000 a pound for it, that he had been getting his meth from a guy at a Tahkodah farmhouse, that he distributed meth to Dawson and Christopher, and that the money in his vent pipe was from drug proceeds.

Swift and Escota Moya challenge the credibility of the government's witnesses, including several co-conspirators who pled guilty to, or were convicted of, conspiracy. However, "a witness's credibility is for the jury to decide," *United States v. Burrage*, ___ F.3d ___, 2012 WL 3155986, at *6 (8th Cir. Aug. 6, 2012), and "[t]he jury's credibility determinations are virtually unreviewable on appeal," *Id.*, *quoting Aldridge*, 664 F.3d at 715. Swift claimed not to know the purpose of the agreement between himself and the other distributors. The jury did not believe this. Escota Moya argued that he was an innocent bystander, which the jury also rejected. The jurors – properly instructed that they could believe all, some, or none of what a witness said – were in the best position to assess the witnesses' credibility. "[G]iving [the verdict] the benefit of all reasonable inferences," a reasonable jury could find Swift and Escota Moya entered into an agreement to possess meth with intent to distribute it. *Aldridge*, 664 F.3d at 715.

Swift also argues that the evidence at trial was insufficient to convict him of possession with intent to distribute the meth found behind the dryer in Dawson's home. According to Swift, he was "simply a visitor," and the meth behind the dryer belonged to Dawson. According to Swift, Dawson was a meth dealer for the entire Batesville area, Swift was in his home for only a minute when police arrived, and he could not have been a dealer because he was unknown to the drug task force (according to Swift, "It would be relatively difficult for an African-American male to go under the radar in a town like Batesville, Arkansas, if this person was involved in the meth drug trade").

Possession of a large quantity of drugs is evidence of intent to distribute. *United States v. Campos*, 306 F.3d 577, 580 (8th Cir. 2002). A jury may infer an intent to distribute through direct or circumstantial evidence, in addition to drug quantity. *Id.*

Swift was convicted of possessing the meth found in Dawson's home based on Dawson's testimony and the testimony of the investigating officers. Dawson testified that he knew Swift was bringing him drugs, and that Swift arrived with the gallon-sized plastic bag containing meth, put it on Dawson's counter, and as soon as officers arrived, grabbed the bag and tried to escape. Swift admitted to officers that he bought the meth at the Tahkodah farmhouse, so (1) he was in actual and sole possession of it as he drove away to Dawson's home, and (2) while in Dawson's home he jointly possessed it with Dawson. Swift's argument that he was merely a visitor and Dawson was the dealer is unsupported by the evidence. It was not unreasonable for the jury to conclude beyond a reasonable doubt that Swift possessed the meth with the intent to deliver it.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____