# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3573
_____

United States of America

*Plaintiff - Appellee*

v.

Kirk Gutknecht

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: April 10, 2013
Filed: July 17, 2013

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS[*], District Judge.

_____

LOKEN, Circuit Judge.

A jury convicted Kirk Gutknecht of conspiring to manufacture and distribute 50 grams or more of actual methamphetamine, and possession of pseudoephedrine with intent to manufacture a controlled substance, in violation of 21 U.S.C.

_____

[*]The Honorable Mary Elizabeth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

§§ 841(a)(1), 841(b)(1)(A), 841(c)(1) and (c)(2), and 846. The district court[1] granted Gutknecht a downward variance, sentencing him to the mandatory minimum 120 months in prison. Gutknecht appeals, arguing that there was insufficient evidence to support the convictions. We review the sufficiency of the evidence *de novo*, "consider[ing] the evidence in the light most favorable to the guilty verdict [and] granting all reasonable inferences that are supported by that evidence." United States v. Wells, 706 F.3d 908, 914 (8th Cir. 2013) (quotation omitted). Applying this deferential standard of review, we affirm.

The government presented testimony by four witnesses who had pleaded guilty to conspiracy to manufacture and distribute methamphetamine and testified pursuant to plea agreements. Methamphetamine user August Defoe testified that, during the conspiracy period alleged in the indictment, 2008 through September 2011, he provided Gutknecht a box of pseudoephedrine pills in exchange for one-half gram of methamphetamine at least a dozen times and saw others exchange pseudoephedrine for methamphetamine with Gutknecht. Dan Rial testified that, after obtaining methamphetamine by "smurfing" pseudoephedrine, he learned how to cook methamphetamine in Gutknecht's attic. Gutknecht and others then brought boxes of pseudoephedrine to Rial to exchange for one-half gram of methamphetamine per box. Gutknecht brought Rial other supplies for the manufacture of methamphetamine at least twenty times, brought Rial methamphetamine made by other cooks to compare the quality, and was present during the manufacture of methamphetamine at least twice. Stacy Hanson, who lived with Gutknecht for a year and was Rial's girlfriend, testified that Gutknecht provided supplies including pseudoephedrine to several methamphetamine cooks, and helped Rial manufacture methamphetamine a number of times. William Bass, Jr. testified that another cook, Clarence Brown, manufactured

---

[1] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

methamphetamine at Gutknecht's residence, and that Bass delivered pseudoephedrine pills to Gutknecht's house and picked up methamphetamine on three occasions.

Viewed in the light most favorable to the verdict, this was ample evidence for a reasonable jury to conclude beyond a reasonable doubt that Gutknecht was aware of and knowingly joined a conspiracy to manufacture and distribute methamphetamine, see United States v. Moya, 690 F.3d 944, 949 (8th Cir. 2012) (elements of the offense), and that he possessed pseudoephedrine knowing, or having reasonable cause to believe, it would be used to manufacture an illegal drug, see United States v. Brown, 461 F.3d 1062, 1069 (8th Cir. 2006). Gutknecht argues the verdict was premised on the testimony of unreliable cooperating witnesses who hoped to reduce their own sentences. It is well established that a witnesses's credibility is for the jury to decide; "the jury's credibility determinations are virtually unreviewable on appeal." Moya, 690 F.3d at 950; see United States v. Aldridge, 664 F.3d 705, 715 (8th Cir. 2011). If credited by the jury, the testimony of the government's cooperating witnesses was sufficient to convict Gutknecht of both charges.

Gutknecht further argues that no reasonable jury could find that he was responsible for conspiring to manufacture and distribute 50 grams or more of actual methamphetamine because only Rial quantified his methamphetamine transactions involving Gutknecht, and the total of those transactions was less than 50 grams. We are not persuaded. Rial testified that his "cooks" yielded 1½ to 2½ grams of methamphetamine from two boxes (5 grams) of pseudoephedrine pills. The government's final witness, Narcotics Agent Bryant Strouse, opined that Rial was not a proficient cook because, in Strouse's experience, two boxes of pills would cook into 3 ½ to 4 grams of methamphetamine. Strouse introduced purchase records showing that Gutknecht purchased 192.26 grams of pure pseudoephedrine from various retail stores from 2008 through 2011. Based on his training and experience, Strouse testified that this quantity of pseudoephedrine could yield "well over 150 grams of pure methamphetamine," using the common "shake and bake" cooking method used

by Rial. The jury could reasonably infer that Gutknecht's pseudoephedrine purchases were intended for the manufacture of methamphetamine because "pseudoephedrine has limited legal uses, and . . . if you do not have a cold, a headache, or sinus problems there are remarkably few things you can do with pseudoephedrine except make illegal narcotics." <u>Brown</u>, 461 F.3d at 1069. Moreover, Defoe, Rial, Hanson, and Bass all testified that Gutknecht traded boxes of pseudoephedrine for methamphetamine on numerous occasions. As in <u>Wells</u>, 706 F.3d at 915, we conclude the evidence was sufficient for a reasonable jury to find that the conspiracy involved at least 50 grams of methamphetamine despite the absence of more specific quantity evidence.

The judgment of the district court is affirmed.

_____