**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 24, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP78-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2016CF196**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

GARRETT A. GERMAN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Chippewa County: JAMES M. ISAACSON, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      SEIDL, J.  Garrett German appeals a judgment, entered upon his no-contest pleas, convicting him of two counts of possession of child

pornography, contrary to WIS. STAT. § 948.12(1m) (2017-18).[1] German contends that the warrant issued for the search of his home was not supported by probable cause because the affidavit upon which the warrant was based lacked the details necessary for the warrant-issuing judge to distinguish German's possession of legal images of pornography from his possession of illegal child pornography. Further, he contends that because law enforcement's reliance on the issued warrant was not in good faith, all evidence derived from the execution of the warrant must be suppressed.

¶2      We assume, without deciding, that there was a lack of probable cause to support the issuance of the search warrant. However, we conclude that the good faith exception to the exclusionary rule applies because law enforcement acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate.

¶3      We reach this conclusion, primarily, because at the time the search warrant was issued no reasonably well-trained Wisconsin law enforcement officer would have known that he or she had to provide a description of the images at issue—beyond that of stating they appeared to constitute child pornography—in order to show probable cause that the images constituted child pornography, as defined by WIS. STAT. § 948.12. Indeed, no Wisconsin legal authority holds that such a description is necessary, and there is a split amongst the federal circuit courts of appeal that have addressed the issue. Consequently, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

## BACKGROUND

¶4    In May 2015, Chippewa Falls Police Department investigator Deborah Brettingen applied to the circuit court for a warrant authorizing a search of "510 1/2 N. Bridge Street, City of Chippewa Falls, Chippewa County, Wisconsin."[2]    Brettingen's search warrant affidavit contained the following averments relevant to this appeal.

¶5    In January 2015, the National Center for Missing and Exploited Children (NCMEC) referred three "CyberTips"—numbered 3593919, 3654072 and 3692234—to the Wisconsin Department of Justice.[3]  Special agent Matt Joy investigated and generated a report for each of these CyberTips.  The reports for CyberTips 3593919 and 3692234 each indicated that a Facebook account linked to German had uploaded an image that "appeared to depict child pornography."[4]

---

[2] We note that the search warrant application does not state that German resided at this residence.  However, German acknowledges in his brief-in-chief that the warrant application sought to search "German's home."

[3] "As provided by 42 U.S.C. § 5773(b)(1)(P)(i), NCMEC is funded in order to 'operate a cyber tipline to provide online users and electronic service providers an effective means of reporting Internet-related child sexual exploitation in the areas of ... possession, manufacture, and distribution of child pornography[.]'" *State v. Silverstein*, 2017 WI App 64, ¶5 n.4, 378 Wis. 2d 42, 902 N.W.2d 550.  The typical NCMEC tip reporting process involves a "private company providing [I]nternet services discover[ing] images of suspected child pornography in a user's account and then, pursuant to federal law, forward[ing] information about the images and the user's account to NCMEC."  *Id.*, ¶5 (footnote omitted).  Here, Facebook was the private company that forwarded the information about the suspected images of child pornography and German's account to NCMEC.

[4] On appeal, German does not dispute that he was, in fact, the Facebook user who uploaded the images in question.

These CyberTips also included the Internet Protocol (IP) address for the account that uploaded the images.[5]

¶6     Joy subsequently submitted his reports to Eau Claire County sheriff's deputy Jeff Nocchi. Nocchi obtained a search warrant and discovered that the physical address associated with the IP address provided in CyberTip 3692234 was "510 1/2 N Bridge St[reet] Chippewa Falls, WI 54729."[6] Nocchi then submitted Joy's reports, along with this physical address, to Brettingen.

¶7     Brettingen averred in the search warrant application that she "did observe" the images corresponding to CyberTips 3593919 and 3692234 and that each image "does appear to be an image of child pornography." Although Brettingen referenced Wisconsin's possession of child pornography statute, WIS. STAT. § 948.12, she did not provide a description of either image, nor otherwise explain how the picture depicted "sexually explicit conduct" within the meaning of that statute.[7]

¶8     The search warrant affidavit also included information about Brettingen's law enforcement qualifications. In particular, Brettingen averred that she had been a police officer for over eighteen years and that she was "currently assigned to the Sensitive Crimes Investigator position where her duties include

---

[5] An IP address is a "unique address that identifies a device on the Internet." ***State v. Baric***, 2018 WI App 63, ¶4, 384 Wis. 2d 359, 919 N.W.2d 221.

[6] On appeal, German does not challenge the validity of the search warrant obtained by deputy Nocchi.

[7] We note that CyberTip 3654072 did not concern any images. Rather, it contained "additional information" associated with German's Facebook account, including a phone number, birthday and email address.

conducting child pornography investigations." Brettingen also stated that she had "received hundreds of hours of formal education and training in various aspects of law enforcement; including theories, procedures, and practices associated with criminal investigations and the application of state and federal statutes." Finally, she averred that she had "received approximately 64 hours of training in the investigation of computer facilitated exploitation of children, and 23 hours of training involving human trafficking and the commercial sexual exploitation of children."

¶9 The circuit court ultimately granted the application and issued a search warrant. In executing the warrant, police recovered the images associated with CyberTips 3593919 and 3692234, as well as ten additional images of child pornography. The image associated with CyberTip 3593919 depicted a female toddler standing in front of an adult male, with the male's erect penis near the toddler's mouth. The image associated with CyberTip 3692234 depicted a male's erect penis ejaculating into the mouth of a young female child, who was approximately five to seven years of age.

¶10 Federal officials subsequently filed an indictment in the United States District Court for the Western District of Wisconsin, charging German with two counts of unlawfully creating child pornography. German moved to quash the search warrant and suppress all evidence derived from its execution. As grounds, he argued that the warrant was not supported by probable cause.

¶11 The federal district court agreed with German, and it therefore granted his motion. The court concluded that "under unambiguous Seventh Circuit case law," an affiant "must at least provide enough of a description for the [warrant-issuing] court to determine if the image qualifies as child pornography as

5

described by the Wisconsin Supreme Court in *Petrone*."[8] Further, the court concluded that because the issuance of the search warrant constituted an "inexplicable ignorance of established law," the evidence recovered pursuant to the execution of the warrant was not admissible under the good faith doctrine.

¶12 After the federal case against German was dismissed, the State filed the criminal complaint underlying this appeal in Chippewa County. German then filed a motion to suppress "all evidence seized … as a result of the illegal search and seizure." In support, he relied solely upon the federal district court's opinion and order.

¶13 At the hearing on German's suppression motion, the circuit court first addressed whether the warrant was lawfully issued. The court stated:

> Given the decisions of the various federal circuit court of appeals and the recent decisions of the 7th Circuit, I feel that there is a persuasive argument that the magistrate should either have a detailed description of the images or a copy of the images themselves attached to the affidavit supporting the request for the search warrant.
>
> However, the case law in Wisconsin does not make such a requirement necessary and, in fact, infers it is not a necessity.

Rather than decide whether the warrant was lawfully issued, however, the court decided to assume "for the purposes of [German's] motion that the affidavit is deficient."

¶14 Accordingly, the circuit court proceeded to analyze whether the "good-faith exception to the exclusionary rule should be applied here." After

---

[8] *See* **State v. Petrone**, 161 Wis. 2d 530, 468 N.W.2d 676 (1991), *overruled on other grounds by* **State v. Greve**, 2004 WI 69, ¶31 n.7, 272 Wis. 2d 444, 681 N.W.2d 479.

summarizing the applicable federal and state authority regarding the good faith doctrine, the court stated:

> Again, I believe that officers here in Wisconsin can rely on Wisconsin law when they are analyzing a situation, and there is no guidance to an officer based on Wisconsin law, that there would be noncompliance with the constitutional requirements, and if the officer were so inclined to look at federal law, they would see that there's a conflict between the circuits that has not been resolved by the United States Supreme Court.
>
> Based upon the Wisconsin case law and a split among the federal district court of appeals, I conclude that the good-faith exception to the exclusionary rule should be applied in this case.
>
> I'm therefore denying the motion to suppress at this time.

¶15 German moved for reconsideration, arguing that the circuit court's initial decision was void because German filed his suppression motion before the State filed its Information.[9] *See* WIS. STAT. § 971.31(5)(b). In the alternative, German argued that the court erred in its interpretation of the relevant case law and urged the court to adopt the decision of the federal district court.

¶16 After a hearing, the circuit court concluded that German had not provided the court with any new evidence, nor had he established that the court's original decision constituted a manifest error of law. Consequently, the court denied the motion for reconsideration.

---

[9] German does not renew this argument on appeal, and we therefore deem it abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶17    German proceeded to plead no contest to two counts of possession of child pornography.  He now appeals the circuit court's denial of his suppression motion.  *See* WIS. STAT. § 971.31(10).

## STANDARD OF REVIEW

¶18    When reviewing a circuit court's decision on a motion to suppress, we apply a two-step standard of review.  *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.  We will uphold the circuit court's factual findings unless they are clearly erroneous.  *Id.*  However, we independently review whether those facts violate constitutional principles.  *Id.*

## DISCUSSION

¶19    German raises two arguments as to why the circuit court erred by denying his motion to suppress.  First, he argues that "the search warrant was not supported by probable cause because the affidavit lacked the details necessary to distinguish legal images from illegal child pornography."  Second, he argues that the "State failed to meet its burden of proving that the good faith exception to the exclusionary rule applied."  We address each argument in turn.

### I.  Sufficiency of affidavit

¶20    The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect persons from unreasonable searches and seizures and establish the manner in which warrants shall issue.  *State v. Tate*, 2014 WI 89, ¶27, 357 Wis. 2d 172, 849 N.W.2d 798.  As relevant here, both constitutions require that a "person seeking a warrant demonstrate upon oath or affirmation sufficient facts to support probable cause to

8

believe that 'the evidence sought will aid in a particular apprehension or conviction for a particular offense.'" *Id.*, ¶30 (citation omitted).

¶21 To determine whether probable cause existed for the issuance of a search warrant, we examine the totality of the circumstances presented to the warrant-issuing commissioner. *State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756. In doing so, we recognize that the "'probable cause standard ... is a practical, nontechnical conception' requiring a court to deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.*, ¶17 (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "The defendant bears the burden of proving insufficient probable cause when challenging a search warrant." *State v. Schaefer*, 2003 WI App 164, ¶5, 266 Wis. 2d 719, 668 N.W.2d 760.

¶22 Here, German's challenge to the sufficiency of the affidavit rests on his assertion that applications for "[w]arrants to search for child pornography must include descriptions of the alleged images or attach a copy of the image itself." In making this argument, German acknowledges that "Wisconsin courts have not directly addressed" whether an affiant must include a description of suspected images of child pornography in order to establish probable cause to believe that the image sought will aid in an apprehension or conviction for possession of child pornography. He also recognizes that the United States Supreme Court has not "specifically addressed" this question.

¶23 Still, German notes that a long line of United States Supreme Court cases hold that a warrant to seize obscene books or movies cannot be issued upon a law enforcement officer's conclusory determination that such material is, in fact, obscene. *See, e.g.*, *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873 (1986).

Moreover, he accurately observes that a number of federal circuit courts of appeal have explicitly required that affidavits seeking warrants to search for suspected images of child pornography include submission of the images themselves or, at the very least, detailed descriptions of the images. *See, e.g.*, ***United States v. Clark***, 668 F.3d 934, 941 (7th Cir. 2012); ***United States v. Pavulak***, 700 F.3d 651, 661 (3d Cir. 2012).

¶24 At the same time, however, German concedes that the federal circuit courts of appeal have not uniformly reached this conclusion, as there is one "outlier" circuit. *See **United States v. Grant***, 490 F.3d 627 (8th Cir. 2007). Namely, in ***Grant***, the Eighth Circuit upheld a warrant to search for child pornography based upon an officer's conclusory averment that an informant had found images of child pornography on a computer. ***Id.*** at 630-32.

¶25 For its part, the State argues that under Wisconsin's "relaxed test" of observational reliability, *see **State v. Silverstein***, 2017 WI App 64, ¶15, 378 Wis. 2d 42, 902 N.W.2d 550, the quantum of information in Brettingen's search warrant affidavit gave rise to probable cause to believe that images of child pornography would be found in German's home. In support, the State points to factors associated with the reliability of Facebook as the initiator of the CyberTips, as well as the independent police work that verified the information reported in the CyberTips. Nonetheless, the State does grant that "it may be a better practice for an affiant to include a description of the images suspected to be child pornography in the search warrant affidavit."

¶26 We agree with the State that the "better practice" for law enforcement seeking to obtain a warrant to search for child pornography is to either include a copy of the image in question or to provide a description of the

image in the search warrant affidavit. However, in this case, we need not adopt a bright-line rule making such practice a requirement to establish probable cause when applying for a warrant. *See State v. Halmo*, 125 Wis. 2d 369, 374 n.5, 371 N.W.2d 424 (Ct. App. 1985) ("When possible, this court will avoid deciding a constitutional question if the case can be decided on other grounds."); *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the narrowest possible ground). Instead, like the circuit court, we assume that the search warrant affidavit at issue was insufficient to establish probable cause and proceed to analyze whether the good faith exception to the exclusionary rule applies.

## II. Good faith doctrine

¶27 Generally, the exclusionary rule operates to exclude evidence obtained from a search conducted in violation of the Fourth Amendment. *Eason*, 245 Wis. 2d 206, ¶2. However, "there are exceptions." *Id.* As relevant here, one such exception applies "when the police act in good faith, or in 'objectively reasonable reliance' on a subsequently invalidated search warrant." *State v. Dearborn*, 2010 WI 84, ¶36, 327 Wis. 2d 252, 786 N.W.2d 97.

¶28 The United States Supreme Court established the good faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). The *Leon* Court determined that the exclusionary rule should not be applied when law enforcement officers who conducted an illegal search "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. And, in the specific context where—like here—law enforcement executes a search pursuant to a warrant, the Court "conclude[d] that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively

reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922.

¶29 This conclusion follows because the exclusionary rule is not "designed to 'redress the injury' occasioned by an unconstitutional search." *Davis v. United States*, 564 U.S. 229, 236 (2011) (citation omitted). Rather, the "rule's sole purpose … is to deter future Fourth Amendment violations." *Id.* at 236-37. In other words, the "exclusionary rule exists to deter police misconduct." *Utah v. Strieff*, 136 S. Ct. 2056, 2063 (2016). Accordingly, "society must swallow this bitter pill [of applying the exclusionary rule] when necessary, but only as a 'last resort.'" *Davis*, 564 U.S. at 237 (citation omitted).

¶30 The *Leon* Court set forth four factors that guide an analysis of when an officer's reliance on a subsequently invalidated search warrant may be considered objectively reasonable, and thereby obviate the need to employ the last resort of exclusion. *Leon*, 468 U.S. at 923. Namely, an officer's reliance on a warrant is not objectively reasonable when any of the following conditions occur: (1) the affiant misleads the warrant-issuing magistrate by knowingly or recklessly supplying false information; (2) the magistrate wholly abandons the judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers could not reasonably have presumed it to be valid. *Id.*

¶31 In *Eason*, our supreme court held that, in addition to the *Leon* factors, article I, section 11 of the Wisconsin Constitution requires the State to make two additional showings for the good faith exception to apply. *Eason*, 245

Wis. 2d 206, ¶¶29, 63. That is, the State "must show that the process used attendant to obtaining the search warrant included a significant investigation and a review by a police officer trained in, or very knowledgeable of, the legal vagaries of probable cause and reasonable suspicion, or a knowledgeable government attorney." *Id.*, ¶63.

¶32 Here, German contends that law enforcement's reliance on the search warrant—which, as discussed, we have assumed for purposes of this opinion to be invalid—was not objectively reasonable for three reasons. Specifically, he argues that the warrant violated the third *Leon* factor and the State failed to meet its burden to show that it satisfied both *Eason* requirements. The State responds that "none of the four *Leon* factors apply and the State can satisfy both additional *Eason* requirements." For the following reasons, we agree with the State's argument and therefore conclude that the good faith exception to the exclusionary rule applies in this case.

### A. *Leon* factors

¶33 As indicated, German only develops an argument as to why the third *Leon* factor is applicable to this case. Nonetheless, for the sake of thoroughness, we discuss each specific factor and explain why none of them counsels against a conclusion that the officers in this case acted in objectively reasonable reliance on the search warrant.

¶34 The first *Leon* factor asks whether the affiant mislead the warrant-issuing magistrate by knowingly or recklessly supplying false information. Here, that was clearly not the case, as there is no allegation that any of the information Brettingen included in her affidavit was false or misleading. Nor was this a situation where Brettingen arguably attempted to conceal

information that would discourage a finding of probable cause to issue the warrant.

¶35    To the contrary, it is undisputed that the images Brettingen observed in CyberTips 3593919 and 3692234 were, in fact, images of child pornography. Nor could there be any such dispute as, based on the descriptions of the images provided above, they unquestionably depicted "child[ren] engaged in sexually explicit conduct."  *See* WIS. STAT. § 948.12(1m); *see also* **State v. Petrone**, 161 Wis. 2d 530, 558, 468 N.W.2d 676 (1991), *overruled on other grounds by* **State v. Greve**, 2004 WI 69, ¶31 n.7, 272 Wis. 2d 444, 681 N.W.2d 479.

¶36    The second **Leon** factor addresses whether the magistrate wholly abandoned his or her judicial role in issuing the search warrant.  The **Leon** Court clarified that this factor refers to the manner in which the magistrate abandoned his judicial role in **Lo-Ji Sales, Inc. v. New York**, 442 U.S. 319 (1979).  **Leon**, 468 U.S. at 923.   In that case, the warrant-issuing magistrate "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. … [H]e was not acting as a judicial officer but as an adjunct law enforcement officer."  **Lo-Ji Sales**, 442 U.S. at 327.  We agree with the State that "[n]othing even remotely comparable to that occurred here," and therefore proceed to the third **Leon** factor.

¶37    The third **Leon** factor is implicated when a warrant so lacked any indicia of probable cause as to render official belief in its existence entirely unreasonable.  German's argument regarding this factor echoes his argument as to why the warrant itself lacked probable cause.  That is, he argues that because Brettingen "offered *only* conclusory assertions that the images depicted child

pornography," there were "no indicia of probable cause" in the search warrant affidavit. Further, he states:

> [I]t has long been the law of the land that warrants for the search and seizure of "obscenity" must be based on more than the affiant's say-so: the affidavit must include the image or describe its contents. It is totally unreasonable for an officer to understand that a conclusory allegation that an image is "obscene" would support a warrant to search for obscene materials under WIS. STAT. § 944.21, but to believe that a conclusory allegation that material is "child pornography" would support a warrant to search for child pornography.

¶38 We are not persuaded by German's argument. German's assertion that Brettingen's affidavit contained "no indicia of probable cause" rests on the false premise that, at the time the warrant was issued, the governing law clearly required a description of the suspected images of child pornography in order to establish probable cause. That was—and is—not the case. As we have already explained—and as German himself acknowledges—there is currently no binding Wisconsin authority, nor any decision from the United States Supreme Court, that delineates what level of description an affiant must provide to establish probable cause that an image is child pornography. And, compellingly, one federal circuit court of appeals has explicitly held that a search warrant affidavit that lacked any description of an image beyond the affiant's statement that the image was child pornography was "sufficient to justify issuing a warrant to search." *Grant*, 490 F.3d at 632.

¶39 Moreover, even if it were the case that the governing law clearly required an affiant to describe the images of child pornography sought to be searched for, it would not follow that the remaining information in the search warrant affidavit provided "no indicia" of probable cause. To explain, the search warrant affidavit indicated that three law enforcement officers reviewed the

CyberTips generated by Facebook and submitted to NCMEC, as required by federal law. The Facebook account identified by those tips as being the source of the images was tied to German, and subsequent investigation showed the account that uploaded the images was physically located at the residence police sought to search. Given this information—and coupled with Brettingen's experience, training and personal observation of the images that led her to conclude the images were, in fact, child pornography—we cannot conclude it would be "entirely unreasonable" for an officer to believe in the validity of the search warrant. *See Leon*, 468 U.S. at 923.

¶40 As to the fourth and final *Leon* factor, we have already explained at length that the state of the law regarding sufficient probable cause to issue a warrant to search for child pornography is unclear. Given this reality, we cannot say that the warrant was "facially deficient." *See id.*

### B. *Eason* requirements

¶41 To satisfy the first *Eason* requirement, the State must show that the process used in obtaining the search warrant included a "significant investigation." *Eason*, 245 Wis. 2d 206, ¶63. German argues the State failed to do so because

> [t]he investigation recounted in the affidavit itself consists of how private companies provided law enforcement with the "CyberTips," and how law enforcement determined a physical address for the computer that sent the images at issue. However, there was no other investigation into whether the defendant sent the images in question, or otherwise suggesting that the defendant possessed child pornography.

The State largely agrees with German's characterization of the facts of the investigation, but it argues we should reach the opposite conclusion based upon

those facts—i.e., that the investigatory steps the affidavit described did show a "significant investigation."

¶42    We agree with the State's position.  A significant investigation occurs when there are "multiple steps" taken to investigate allegations of criminal activity.  *See* *State v. Scull*, 2015 WI 22, ¶41, 361 Wis. 2d 288, 862 N.W.2d 562. As set forth in the search warrant affidavit, law enforcement officials from three state agencies reviewed the information provided in the CyberTips.  Special agent Joy, the first reviewing officer, prepared reports regarding the tips, which he forwarded to deputy Nocchi.  Nocchi then confirmed that an IP address in one of the CyberTips corresponded to the address that investigator Brettingen later sought to search in her search warrant application.  In addition, Brettingen averred that she personally reviewed the images provided in the CyberTips and that they "did appear to be image[s] of child pornography."

¶43    Apart from that portion of his argument where he asserts that Brettingen should have provided a detailed description of the images contained in the CyberTips, he fails to provide citation to any legal authority that would explain what was deficient about this investigation.  Thus, at bottom, German's contention that the investigation was not "significant" enough to satisfy the first *Eason* condition rests on the fact that the search warrant affidavit did not describe the images contained in the CyberTips.  But, again, there was no controlling authority alerting Brettingen that she had an obligation to do so.  Consequently, we conclude that the State met its burden to show that the process used in obtaining the search warrant included a significant investigation.

¶44    The second *Eason* requirement obligates the State to show that before seeking a search warrant, there was a review of the warrant application by

either a police officer trained in the legal vagaries of probable cause and reasonable suspicion, or by a government attorney. *Eason*, 245 Wis. 2d 206, ¶63. German asserts in his brief-in-chief that the State failed to do so here because there is "no indication" that a government attorney reviewed the application.

¶45     As the State notes, however, *Eason* allows for review by either a government attorney *or* "a police officer trained in, or very knowledgeable of, the legal vagaries of probable cause." *Id.* Accordingly, the State argues that Brettingen's extensive training and experience, as set forth in her affidavit, satisfied the second *Eason* requirement. German replies that "there is no evidence that Brettingen was specifically 'trained and knowledgeable in the requirements of probable cause and reasonable suspicion,' which are technical, legal determinations independent from the factual investigations Brettingen has experience conducting."

¶46     We reject German's argument that the affidavit had to show direct evidence that Brettingen was specifically trained and knowledgeable in the requirements of probable cause and reasonable suspicion for the State to satisfy the second *Eason* requirement. Rather, we conclude that Brettingen's eighteen years of experience, combined with her averment that she had received "hundreds of hours of formal education and training in various aspects of law enforcement; including theories, procedures, and practices associated with criminal investigations and the application of state and federal statutes," satisfies the second *Eason* requirement.

### CONCLUSION

¶47     In sum, we assume, without deciding, that there was a lack of probable cause to support the issuance of the search warrant. Nonetheless, we

conclude that the good faith exception to the exclusionary rule applies because the State has met its burden of establishing that law enforcement acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate. Therefore, the circuit court properly declined to suppress the evidence obtained pursuant to the execution of the warrant.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.