# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  08-1523

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas. |
| | * | |
| Frank Jeremy Wallace, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2008
Filed: December 23, 2008

_____

Before BYE, BEAM and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Frank Wallace appeals from the denial of a motion to suppress, challenging the validity of a search warrant that led to the physical evidence used against him. Because the warrant was supported by probable cause, we affirm.

## I.      BACKGROUND

On November 21, 2006, Detective Bertrand submitted an affidavit in support of an application for a warrant to search Wallace's residence to a Benton County Circuit Judge.  In that affidavit, Bertrand stated that on October 27, 2006, the Bentonville Police Department received a complaint from the Arkansas State Police

Crimes Against Children Division referencing a hotline call it received that day. Bertrand first summarized the hotline complaint in the affidavit as follows:

> [T]he victim . . . (11 years old), was visiting the suspect, Frank Wallace (35 years old) at his home in Bentonville. During this time Frank asked . . . to pull her shirt up around her neck so he could take pictures of her. Allegedly Frank then offered . . . $10.00 to pull her shirt up around her neck. Additionally Frank asked . . . to pose in "suggestive" ways. Ultimately . . . posed for the pictures but was fully clothed. The complaint also alleges that Frank offered . . . something "weird" to drink, possibly alcohol.

The affidavit went on to state that Bertrand contacted the alleged victim's father and confirmed that, indeed, the girl recently stayed overnight at Wallace's residence. Bertrand set up an interview with the girl for October 30, 2006, but she did not show up.

On November 20, 2006, the Children's Advocacy Center conducted a rescheduled interview with the girl. While not present in the interviewing room, Bertrand listened to and viewed the live interview by way of closed-circuit video. In the affidavit, Bertrand recited content from the girl's interview, specifically detailing that while at Wallace's residence, Wallace asked the girl to "take a 'dirty' picture," gave the girl a shirt to change into, which the girl described as "low cut and more revealing," posed the girl and took pictures. When asked by the interviewer what she meant by a "dirty" picture, the girl responded "like what Playboy people do." The girl specifically detailed for the interviewer the poses Wallace placed her in for the photographs. In the interview, the girl further described and drew what she called the "model area," noting the presence of lighting equipment and blankets as backdrops. Additionally, the girl offered that she viewed another woman's "private" in a picture on Wallace's computer as well as the photographs of herself that Wallace had just taken. Finally, the affidavit includes recitation of a statement from the girl that when

Wallace told her to leave the room, he said "she had better not tell anyone 'or else.'" Bertrand stated that his reliability as an affiant was based upon over eight years as a law enforcement officer and "extensive training in criminal investigation and specifically Crimes against children."

At the suppression hearing, the judge discussed other statements Bertrand acknowledged the girl made during her interview but which Bertrand did not include in the affidavit. For example, during the interview, the girl had also stated that she had "almost been kidnapped a bunch of times," she did not feel safe at home, and that her stepmother (Wallace's ex-wife) had "hog-tied" her own son (the girl's step-brother) and "put him in the dryer." Bertrand testified that while there was no evidence to substantiate these allegations, he did not question the girl's credibility about the incident in question.

Further addressed at the suppression hearing was the discussion Bertrand had with the issuing judge at the time Bertrand sought the search warrant. The issuing judge questioned the time that had elapsed between the receipt of the hotline complaint, October 27, 2006, and the interview of the girl, November 20, 2006. In response Bertrand explained that the girl had not shown up for the first interview and that it had been rescheduled. The issuing judge then made a phone call, which Bertrand assumed was to another judge, and ultimately signed off on the search warrant stating that it was her understanding that individuals who take such photographs generally retain them for a period of time.

The officers executed the search warrant at Wallace's residence on November 21, 2006. As a result of the evidence obtained from the search, Wallace was indicted on seven counts of knowingly receiving through interstate commerce a visual depiction of a minor engaged in sexually explicit conduct. In its ruling denying the

motion to suppress, the district court[1] determined that the effect of the call made by the issuing judge to confer about the possible staleness of the evidence given the elapsed time was neutral. "There is no indication that the telephone call, whether or not improper, impacted [the judge's] neutrality or capability to determine probable cause." The district court further held that Bertrand's affidavit established probable cause to believe Wallace had solicited the girl to pose for a sexually explicit photograph in violation of Arkansas law and that there was a "fair probability" that evidence of the crime would be found at Wallace's residence.

On appeal, Wallace challenges the existence of sufficient probable cause within the four corners of the affidavit to support the search warrant.

## II.    DISCUSSION

"When we review a district court's denial of a motion to suppress, we review its factual findings for clear error and its legal findings de novo." United States v. Cartier, 543 F.3d 442, 445-46 (8th Cir. 2008).

### A.    Probable Cause

"To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." United States v. Summage, 481 F.3d 1075, 1077 (8th Cir. 2007), cert. denied, 128 S. Ct. 875 (2008). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" United States v. Underwood, 364 F.3d 956, 963 (8th Cir. 2004) (quoting United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002)). Judges "may draw reasonable

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000).

Wallace argues that the affidavit in question did not support a determination regarding the existence of probable cause in this case because (1) a violation of the relevant Arkansas law requires the exhibition of a female breast and nothing in the affidavit supports the theory that Wallace attempted to take such a photograph or otherwise illicit such an exhibition here, and (2) Bertrand purposefully used conclusory and vague statements in order to get the judge to draw a similar conclusion as to whether Wallace had engaged in the alleged conduct.

We reject each assertion in turn. First, only a *probability* of criminal conduct need be shown in the affidavit. Summage, 481 F.3d at 1078. The level of specificity suggested by Wallace, specifically that the girl needed to say precisely that her bare breast was exposed, is not necessary given the totality of the circumstances in this case. Without a doubt, the reasonable inferences that can be drawn from the recitation of this young girl's testimony concerning the nature of the requests and photographs made by Wallace support a finding of probable cause to believe that Wallace's actions constituted criminal conduct. Offering an eleven-year-old girl money to lift up her shirt so one could take a "dirty" picture of her, "like what Playboy people do," and subsequently taking a photograph of that same girl in a "revealing" loose shirt could lead a prudent person to believe that criminal conduct was underway and that there would be a fair probability that evidence of a crime would be found in the place to be searched.

Further, Bertrand's affidavit contains neither conclusory nor vague statements. It merely recites the statements made by the girl during the interview. A conclusory statement would leave one wondering, for example, the source of information–statements like "Wallace took the girl to his room and asked her to take

a dirty picture," or "I have received reliable information from a credible person and believe that Wallace solicited this girl to pose for a sexually explicit photograph." Rather, throughout Bertrand's affidavit, he includes statements such as "she said" and "she stated" and "she indicated," at all times referencing the statements made by the girl during her interview. This affidavit was not "a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. 213, 239 (1983).

## B. Omitted Statements

Wallace also argues that Bertrand intentionally omitted information from his affidavit that deprived the judge of key information necessary to determine probable cause–namely additional comments made by the young girl during her interview regarding alleged kidnapping attempts and physical abuse by her stepmother towards her own son. Wallace claims that these omitted statements would have been critical to the issuing judge in assessing the credibility of the eleven-year-old girl whose statements formed the basis of the affidavit. We reject Wallace's argument.

> A search warrant may be invalidated because of omitted facts [in a supporting affidavit] if (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause.

United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008) (internal quotations omitted).

There is no evidence that Bertrand omitted these statements from his affidavit with the intent to mislead the tribunal or in reckless disregard of the truth. Indeed, the evidence demonstrates that the girl's statements did not raise any issues of credibility with Bertrand regarding the claims she made against Wallace on the Arkansas State Police Child Abuse Hotline and during the subsequent police interview.

And, these unrelated statements, even if included in the affidavit, would not have been fatal to its sufficiency. Bertrand observed the girl in person, had the opportunity to evaluate her credibility while she was interviewed by trained forensic examiners, and compared her interview to the information contained in the hotline report. Further, during the interview, the girl was quite detailed in her description of what transpired with Wallace during the events in question as well as the physical environment she was in at that time. Not only is more weight given to information where officers meet face-to-face with the informant and judge her to be credible, United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994), but law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable. United States v. McKinney, 328 F.3d 993, 994 (8th Cir. 2003). Comments about alleged kidnappings and abuse, while distracting, unrelated and even possibly untrue, do not detract from the girl's credibility regarding the crime at issue here.

## III.   CONCLUSION

For the reasons stated herein, we affirm.

_____