# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2381

_____

United States of America

*Plaintiff - Appellee*

v.

Matthew O'Dell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: June 13, 2014
Filed: September 9, 2014
[Published]

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

PER CURIAM.

Matthew O'Dell pled guilty, pursuant to a conditional plea agreement, to one count of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e).

The district court[1] sentenced him to a 240-month term of imprisonment, to be followed by a lifetime term of supervised release. O'Dell appeals the denial of his motion to suppress evidence seized pursuant to a search warrant from his room at a YMCA camp. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the search warrant was supported by probable cause, we affirm.

## I. Background

O'Dell, a supervisor at a YMCA camp in Wakonda, Missouri, posed on-line as a young girl named Hannah. Using this identity, he convinced teenage boys that Hannah wanted to meet them. O'Dell would then meet the boys, claiming to be Hannah's cousin. When Hannah failed to show up—or while they awaited Hannah's arrival—he either attempted to have sex with the boys or engaged in sexual activity with them. A boy who had been solicited by O'Dell reported O'Dell to the Springfield, Missouri, police department. A patrol officer took the boy's statement, and Detective Reece was assigned to investigate.

On July 31, 2009, Detective Reece submitted an application for a search warrant to search O'Dell's room at the YMCA camp. In his affidavit, Detective Reece stated he had been assigned to follow up on an allegation of child molestation "described in Springfield Police Report 09-32897." Reece summarized the police report in the affidavit as follows:

> The victim, T.H., [d.o.b.], stated that he began communicating with a white female named "Hannah," while he was online on MySpace.com. He began to have online chats with Hannah and eventually started to text message her. The phone "Hannah" was using belonged to Matthew O'Dell, an adult. O'Dell stated that he was Hannah's cousin. O'Dell

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

-2-

told T.H. that he worked at YMCA Camp Wakonda as a Supervisor. During this time, O'Dell invited T.H. to come to Camp Wakonda to meet Hannah. T.H. and O'Dell went to the camp and spent the night, but T.H. did not met [sic] Hannah during this trip. O'Dell stated that Hannah was not able to make it to the camp that night.

Later on, O'Dell again asked T.H. to go to Camp Wakonda to meet with Hannah. Again, T.H. agreed to go to the camp. O'Dell picked him up, but O'Dell said that he had to do a live radio broadcast with a local radio station and they needed to stay the night in Springfield, MO. They stayed in the Days Inn, located on N. Glenstone Avenue. During the stay there, O'Dell touched T.H. [sic] genitals and tried to get T.H. to have anal sex with him. T.H. was able to look at O'Dell's phone and realized that Hannah was actually O'Dell. T.H. left the apartment at that time.

T.H. was later interviewed and stated that he knew O'Dell had two other cell phones that he used to communicate.

The affidavit further stated:

On July, 29, 2009, I was contacted by Renee Wehmeier of the Greene County Children's Division. Wehmeier stated she had spoke [sic] with three other families whose teenage boys had been talking to "Hannah" online. One of the boys, "Dillion" had also spent the night with O'Dell while waiting to meet Hannah. Dillion stated that O'Dell had several computers in his house along with a total of three cell phones.

On July 31, 2009, I responded to 1073 S. Campbell #B103 to contact O'Dell. The apartment was empty and being remodeled.

I then contacted Camp Wakonda and they stated O'Dell had been living in a room at the camp. O'Dell had been fired on July 31, 2009, but his personal items, including a computer were still in the room. Matt Shroyer, the Director of Camp Wakonda, stated that O'Dell had been living at the camp for several weeks.

-3-

In the affidavit, Detective Reece also stated his belief, based on his training and experience, that evidence showing O'Dell communicating with juveniles, using the persona of "Hannah," would be located on computers and cell phones in O'Dell's room at Camp Wakonda. The warrant was issued by a Lawrence County Associate Court Judge and authorized a search for, inter alia, photographs, graphic images in either printed or electronic form, and video tapes depicting child pornography.

O'Dell filed four motions to suppress evidence.[2] His appeal addresses one issue: the denial of his motion to suppress evidence seized during the search of his room at the YMCA camp because the affidavit submitted in support of the search warrant lacked probable cause. An evidentiary hearing was held on February 15, 2011, before a magistrate judge.[3] The magistrate judge filed a Report and Recommendation, recommending that the motions, as well as the requests for Franks hearings, be denied. The magistrate court found that the "affidavit filed in support of the search warrant clearly provides a substantial basis to determine that probable cause existed to search defendant's room at the camp." The district court[4] adopted the Report and Recommendation and denied the motions.

After his motions were denied, O'Dell pled guilty. In his plea agreement, O'Dell reserved the right "to file a direct appeal from his conviction to obtain appellate review of the denial of his pretrial motion to suppress the seized evidence

_____

[2]Two of his motions to suppress evidence were based on search warrants. Along with those motions, he also requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). He does not appeal the denial of his request for a Franks hearing in connection with either motion.

[3]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

[4]The Honorable Ortrie D. Smith, United States District Court Judge for the Western District of Missouri.

from his cabin located at Camp Wakonda." He asks us to reverse the district court's decision denying his motion to suppress and allow him to withdraw his guilty plea.

## II. Discussion

O'Dell asserts the affidavit submitted in support of the issuance of the search warrant to search his room at Camp Wakonda lacks probable cause because it relies primarily on two unidentified persons—"T.H." and "Dillion"—with no statement as to their individual reliability. He further contends the information T.H. and Dillion provided, such as O'Dell contacting them through MySpace and O'Dell having multiple cell phones, was easy to confirm. O'Dell argues Detective Reece's failure to verify this information showed a "reckless disregard for the truth." He further asserts the statements are so unreliable they should be removed from the affidavit, and once removed, he contends the affidavit does not provide probable cause.

"In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the ultimate question of whether the Fourth Amendment was violated *de novo*." United States v. Allen, 705 F.3d 367, 369 (8th Cir. 2013). "Our role is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted). "The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (internal quotation marks omitted). We accord "great deference to a magistrate's determination as to whether an affidavit establishes probable cause." Id. (quotation omitted). The issuing judge should review the affidavit with a "common sense approach and not in a hypertechnical fashion." Id. (quotation omitted).

"When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." Solomon, 432 F.3d at 827 (internal quotation marks omitted). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." Id. "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) (quoting Williams, 10 F.3d at 593)).

We agree with the district court that the information contained in the affidavit provided sufficient probable cause to issue the warrant to search O'Dell's room at the YMCA camp. According to the affidavit, T.H., the alleged victim of attempted sexual abuse, identified himself to officers and voluntarily provided a detailed statement regarding how O'Dell approached him and the attempted sexual abuse. "[L]aw enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable." United States v. Wallace, 550 F.3d 729, 734 (8th Cir. 2008). In addition, we have long accorded known informants more credence than anonymous or confidential informants: for one thing, they can be held responsible if the allegations turn out to be fabricated. See United States v. Stevens, 530 F.3d 714, 718–19 (8th Cir. 2008). While T.H. was not identified by name in the affidavit, his identity was known to law enforcement at the time the affidavit was prepared.

The affidavit also included similar information that Detective Reece had received from Renee Wehmeier, a County Children's Division employee: reports from three families whose teenage boys had likewise talked to "Hannah" online. One of the boys spent the night with O'Dell while waiting to meet Hannah and stated O'Dell had several computers in his house and three cell phones. "Although neither source had a prior history of providing information to law enforcement, the receipt of consistent information from two separate sources is a form of corroboration." Keys, 721 F.3d at 518.

In addition, some of the information provided by T.H. and Dillion was corroborated by Detective Reece's independent investigation. "[I]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." Id. (internal quotation marks omitted). First, Detective Reece stopped by an apartment he believed to be rented by O'Dell and found it empty. Next, Detective Reece verified that O'Dell had been employed by Camp Wakonda and had been living there for several weeks. He was told O'Dell had left the camp that morning, but his personal belongings, including a computer, were still in the room. Given that Detective Reece had gone to an apartment he believed to be rented by O'Dell and found it empty, "there [was] a fair probability that contraband or evidence of a crime [would] be found" in O'Dell's room at the camp. Id. (quotation omitted). Accordingly, we affirm.

_____