# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3789

_____

United States of America

*Plaintiff - Appellee*

v.

Martavis Shawn Demar James

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 20, 2020
Filed: July 9, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

Over the course of several months, Martavis James robbed or attempted to rob multiple stores around the Twin Cities. After law enforcement identified him by searching cellular-tower records, which showed that his cell phone was at or near at

least four of the robberies, he challenged the constitutionality of the search. The district court[1] denied James's motion to suppress, and we affirm.

I.

While looking into a series of robberies, investigators began to suspect that a single individual committed all of them. The main clue was a common modus operandi. Each time, the robber entered a store near closing time carrying a red and black duffel bag and wearing a long, hooded jacket; a dark hat; and a black face mask. He ordered the employees to a back room at gunpoint, where they handed over money from the store safe, and then he fled on foot.

When security-camera footage did not reveal the robber's identity, investigators turned to cellular-tower data, which allowed them to compare numbers that connected to nearby towers during an approximately 90-minute period around each robbery. The first search warrant, which a state judge approved, covered three robberies. After investigators connected more to the same unidentified individual, two additional search warrants allowed investigators to examine the cellular-tower records for those crimes.

It did not take long to identify a "common number," which led investigators to James. They apprehended him after he tried to commit yet another robbery and searched his car, where they found a bank-deposit bag and a red and black duffel bag. Based on the evidence collected, the government charged him with eight counts of interference with commerce by robbery and two counts of attempted interference with commerce by robbery. *See* 18 U.S.C. § 1951.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Hildy Bowbeer, United States Magistrate Judge for the District of Minnesota.

Before trial, James moved to suppress the evidence discovered, arguing that there was no probable cause and that the search warrants lacked particularity. The district court denied the motion and, after a jury trial, convicted him of all 10 counts and sentenced him to 180 months in prison. On appeal, James renews the same arguments he made before.

## II.

De-novo review applies to any legal questions lurking behind the district court's denial of James's motion to suppress. *See United States v. Ahumada*, 858 F.3d 1138, 1139 (8th Cir. 2017). James's probable-cause and particularity challenges fall into that category, so our review is de novo.

## A.

Probable cause presents the closer call. Though establishing probable cause "is not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), it still requires "a showing of facts" that "create a fair probability that evidence of a crime will be found in the place to be searched," *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curiam) (quotation marks omitted). Our task when reviewing search warrants after the fact is to determine whether the judges who approved them had "a substantial basis for concluding that probable cause existed." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (internal quotation marks omitted).

In this case, we conclude that they did. The affidavits accompanying the applications described the robberies in detail, including the overlapping facts that led investigators to believe that a single individual committed all of them. Prominently mentioned was the "nearly identical" modus operandi.

The affidavits also explained why there was "a fair probability" that the cellular-tower records would identify the robber. *Wallace*, 550 F.3d at 732

(quotation marks omitted).  Cell phones are common and, even if there was no direct evidence that the robber had one, criminals will, in the investigator's training and experience, use them to contact co-conspirators during or after committing a crime. *See United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020).  And if the robber had done so, his cell phone would have connected to a nearby tower, which investigators could then discover by examining the records kept by cellular providers.

Considered in their totality, these facts "provided a substantial basis" to conclude that probable cause existed.  *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (quotation marks omitted).  The judges knew from the affidavits that the robberies were connected by a common modus operandi; that the robber likely carried a cell phone, even if he did not use it during the robberies; and that comparing the numbers from cellular-tower records could reveal his true identity.

In James's view, none of this is enough because no one could connect *the robber* to a cell phone.  *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (explaining probable cause's "nexus" requirement).  James claims that, without this connection, the judges who approved the warrants did no more than guess that investigators would find "useful evidence" in the cellular-tower records.  *Johnson*, 848 F.3d at 878 (quotation marks omitted); *see United States v. Griffith*, 867 F.3d 1265, 1275 (D.C. Cir. 2017) (accepting a similar argument).

The problem with this argument is that probable cause is about "fair probabilit[ies]," not near certainties.  *Wallace*, 550 F.3d at 732 (quotation marks omitted).  Even if nobody knew for sure whether the robber *actually* possessed a cell phone, the judges were not required to check their common sense at the door and ignore the fact that most people "compulsively carry cell phones with them all the time."  *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018); *see United States v. Eggerson*, --- F.3d ---, 2021 WL 2303072, at *2 (8th Cir. June 7, 2021) (calling cell phones "ubiquitous").  And besides, they also knew that criminals often use cell

-4-

phones to "call and/or text message" others after the crime is over. As "a practical and common-sens[e] standard," probable cause leaves plenty of room to draw reasonable "inferences" from less-than-perfect evidence.[2] *Cronin v. Peterson*, 982 F.3d 1187, 1197 (8th Cir. 2020) (quotation marks omitted).

Nor will allowing these warrants to stand mean that it is now fair game to search the records from "cell phone towers near the location of *every* crime." (Emphasis added). James forgets that there were specific facts here that connected the unidentified robber to a series of crimes, making this case different from those involving only a single crime. All we are saying is that in this particular situation, when evidence connected multiple crimes, there was "a fair probability" that records from nearby towers would reveal incriminating evidence, or at the very least, the judges who approved the search warrants had "a substantial basis" to think so. *Johnson*, 848 F.3d at 878 (quotation marks omitted).

## B.

The search warrants also satisfied the Fourth Amendment's particularity requirement.[3] *See United States v. Fiorito*, 640 F.3d 338, 346–47 (8th Cir. 2011).

---

[2]In fact, we allow these types of reasonable inferences all the time. *See, e.g.*, *Eggerson*, 2021 WL 2303072, at *4 ("It would be unreasonable and impractical to demand that judges evaluating probable cause must turn a blind eye to the virtual certainty that drug dealers use cell phones."); *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.").

[3]In concluding that the searches did not violate the Fourth Amendment, we necessarily assume, without deciding, that James had standing to challenge the search warrants. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (explaining that "Fourth Amendment standing" is not jurisdictional and need not be addressed

Although "[t]he degree of specificity required . . . var[ies] depending on the circumstances and the types of items involved," *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986) (internal quotation marks omitted), the Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The manifest purpose of th[e] particularity requirement was to prevent general searches.").

Here, as the district court explained, the search warrants were "constrained—both geographically and temporally—to the robberies under investigation." Geographically, they covered only the cellular towers near each robbery. Temporally, the period was narrow and precise: only about 90 minutes, with exact times listed. Given these specific limitations, the warrants were "sufficiently definite" to eliminate any confusion about what the investigators could search. *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999).[4]

---

first); *see also Carpenter*, 138 S. Ct. at 2219–20 (declining to address whether "tower dumps" invade an individual's "reasonable expectation of privacy" (quotation marks omitted)).

[4]Although James argues that the search warrants allowed the investigators to see more than they ultimately needed, such as "[c]all detail record information . . . consist[ing] of date, time, duration, originating number, [and] termination number," *see Garrison*, 480 U.S. at 84 (defining "the scope of a lawful search" by considering "the object of the search and the places in which there is probable cause to believe that it may be found" (quotation marks omitted)), they were still "sufficiently definite" to pass constitutional muster, *Horn*, 187 F.3d at 788. But even if they were not, the investigators still acted reasonably and in good faith on them. *See United States v. Leon*, 468 U.S. 897, 922–23 (1984).

## III.

We accordingly affirm the judgment of the district court.

_____