# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2146
_____

United States of America

*Plaintiff - Appellee*

v.

Jose Ignacio Sandoval

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Central
_____

Submitted: March 15, 2023
Filed: July 24, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Jose Sandoval, known on the street as "Nacho," was a methamphetamine dealer in Iowa. While executing a warrant to search his home, officers found digital scales, drug paraphernalia, guns, and wads of cash. They also elicited several

incriminating statements from him once he was in custody. The district court[1] denied Sandoval's motion to suppress this evidence, and Sandoval eventually pleaded guilty to conspiracy to distribute a controlled substance. He then absconded to Mexico for almost eight years. When he finally faced sentencing, the district court[2] applied an obstruction-of-justice enhancement and rejected his request for an acceptance-of-responsibility reduction. On appeal, Sandoval challenges the denials of his suppression motion and his request for an acceptance-of-responsibility reduction. We affirm.

## I.

On January 9, 2013, Eric Young, a Special Agent with the Iowa Division of Narcotics Enforcement, applied for a warrant to search Sandoval's residence and three cars. In Young's accompanying affidavit, he described five pieces of information about Sandoval that he gathered from various sources between May 2012 and January 2013.

First, in May 2012, officers interviewed Joseph Stetz, a methamphetamine user who knew Jimmy Morris, a methamphetamine dealer. Stetz told the officers that Morris told him that a Mexican man known as "Nacho" was his supplier and that this man transported methamphetamine in a white Cadillac Escalade.

Second, in September 2012, officers interviewed Pedro Delatorre, a methamphetamine dealer who, like Morris, described selling drugs for "Nacho."

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, now retired, adopting the Report and Recommendation of the Honorable Leonard T. Strand, then United States Magistrate Judge for the Northern District of Iowa, now Chief Judge, United States District Court for the Northern District of Iowa.

[2]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

Delatorre told the officers that he did not know Nacho's real name but knew that he drove a white Escalade.

Third, in December 2012, Young spoke with a police officer, Deputy Darren Robinson, who said that he knew from multiple informants that "Nacho" was Jose Sandoval. (Young did not identify or mention any details about these informants.) Deputy Robinson also provided Young with Sandoval's home address. With this information, Young learned from state records that Sandoval owned two white Cadillac Escalades.

Fourth, later that December, officers interviewed Christopher Hawken and learned that he bought methamphetamine from Jeremy Roberts. Hawken said that Roberts's supplier was a man called "JP," who in turn was supplied by "Nacho." Young knew JP to be James Poole.

Finally, on January 8, 2013 (one day before Young applied for a warrant), Poole was arrested after officers found him with a quarter pound of meth. Once *Mirandized*, Poole identified "Nacho" as his supplier and described Nacho's home and how to get there. According to Young, Poole's directions were consistent with Sandoval's address that Deputy Robinson provided earlier. Poole added that he had bought methamphetamine from Nacho at his home several times in the last month and that Nacho had guns. Young considered Poole reliable because some of his information was corroborated by law enforcement and he had provided reliable information in two prior investigations.

Concluding that Young's affidavit established probable cause, an Iowa state judge issued a warrant to search Sandoval's home and cars. Officers executed it the same day.

During the search, officers found digital scales, drug paraphernalia, more than $3,000 in cash, and various firearms. Sandoval was arrested at the scene and taken to jail. A few hours later, Sandoval requested to speak with Young. Once

*Mirandized*, he confessed to Young that he sold methamphetamine to Poole and others. Sandoval was indicted later that month.

Sandoval moved to suppress the evidence seized from the search and the statements that he made to Young. He argued that Young's affidavit relied on uncorroborated information and thus did not establish probable cause and that his subsequent, post-*Miranda* statements were therefore tainted. His motion was denied. He then conditionally pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, reserving the right to appeal the suppression ruling. *See* Fed. R. Crim. P. 11(a)(2).

Following his plea hearing, Sandoval was released from custody and ordered to self-surrender a few weeks later. When he failed to do so, the district court issued a warrant for his arrest. For nearly eight years, Sandoval lived in Tijuana, Mexico, managing to evade detection while running a grilled-chicken business and working as a mechanic. Eventually, though, he decided to face justice. He went to the border near Tecate and informed Mexican police that he was the subject of an arrest warrant in the United States. From there, he was seized by the Marshals Service and returned to the Northern District of Iowa.

At Sandoval's much-delayed sentencing hearing, the district court applied a two-level enhancement for obstruction of justice based on his absconsion, *see* U.S.S.G. § 3C1.1, and rejected his request for a two-level acceptance-of-responsibility reduction, *see* U.S.S.G. § 3E1.1. Sandoval's advisory sentencing guidelines range was 188 to 235 months' imprisonment, and the court sentenced him to 188 months. He appeals.

## II.

We start with Sandoval's suppression motion. When considering the denial of a motion to suppress, we review the district court's factual findings for clear error,

and we review its conclusion about whether the Fourth Amendment was violated *de novo*. *United States v. Walker*, 68 F.4th 387, 390-91 (8th Cir. 2023).

The question is whether Young's affidavit established probable cause to issue a search warrant for Sandoval's home and cars. An affidavit in support of a warrant establishes probable cause when it sets forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (internal quotation marks omitted). Where, as here, an affidavit's showing of probable cause depends on information supplied by an informant, the "core question" is whether the information is reliable. *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). Information may be sufficiently reliable if the informant "has a track record of supplying reliable information" or if what he supplies is independently corroborated. *Id.* Even the corroboration of "minor, innocent details" can establish reliability. *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013). Ultimately, the existence of probable cause depends on the "totality of the circumstances." *Grant*, 490 F.3d at 631. We therefore examine the sufficiency of a search-warrant affidavit "using a common sense and not a hypertechnical approach." *Id.* (internal quotation marks omitted).

Sandoval argues that Young's affidavit failed to establish probable cause because, although Young stated that Stetz, Delatorre, Hawken, and Poole all described "Nacho" as a source of methamphetamine, Young identified Nacho as Sandoval only by way of Deputy Robinson, without providing any support for Deputy Robinson's belief that Nacho was in fact Sandoval. We are unpersuaded.

As Sandoval concedes, Young's affidavit established a fair probability that "Nacho" was a methamphetamine supplier who transported drugs in a white Cadillac Escalade and conducted drug deals at his home. True, Young did not specify how Deputy Robinson knew Nacho was Sandoval, other than mentioning that Deputy Robinson learned this from unnamed informants. But Young did indicate that the address for Sandoval supplied by Deputy Robinson matched the description and

directions for Nacho's home provided by Poole—an informant with a record of providing reliable information. *See O'Dell*, 766 F.3d at 874. The information from Deputy Robinson was thus independently corroborated. *See id.* On top of this, Young explained that state records revealed that Sandoval owned two white Cadillac Escalades—the same vehicle that Stetz and Delatorre reported that Nacho drove. Considering the totality of the circumstances, Young's affidavit established probable cause to believe that Sandoval was involved in methamphetamine distribution and that evidence of this crime would be found in his home and cars. Accordingly, the district court did not err in denying Sandoval's motion to suppress.

**III.**

We now consider the denial of Sandoval's request for an acceptance-of-responsibility reduction. "We give great deference to a sentencing judge's denial of an acceptance-of-responsibility reduction and review for clear error only." *United States v. Chappell*, 69 F.4th 492, 494 (8th Cir. 2023) (internal quotation marks omitted).

Under U.S.S.G. § 3E1.1(a), a district court may apply a two-level reduction where a defendant has shown "a recognition and affirmative responsibility for the offense and sincere remorse." *United States v. Cooper*, 998 F.3d 806, 810 (8th Cir. 2021). "Merely pleading guilty does not entitle a defendant to this reduction." *Chappell*, 69 F.4th at 494. "Rather, § 3E1.1(a) is intended to distinguish a sincerely remorseful defendant from a defendant not manifesting penitence." *Id.* (internal quotation marks omitted). "Thus, we have consistently affirmed denials of this reduction to defendants whose conduct belies their claims of contrition, even where that conduct was unrelated to the underlying offense . . . ." *Id.* (citation and internal quotation marks omitted).

Further, it is "extremely rare and highly exceptional" for a defendant who receives an obstruction-of-justice enhancement under § 3C1.1, as here, to be eligible for an acceptance-of-responsibility reduction. *United States v. Smith*, 665 F.3d 951,

957 (8th Cir. 2011). There is no "magic formula" for identifying these "extraordinary case[s]," though they may be found where the obstruction was "an isolated incident early in the investigation," where the defendant "voluntarily terminated his obstructive conduct," or where he "admitted and recanted" the obstruction. *United States v. Honken*, 184 F.3d 961, 968-69 (8th Cir. 1999). A case is exceedingly unlikely to be "extraordinary" where the defendant obstructs justice after pleading guilty. *Id.* at 970.

Sandoval does not contest the obstruction-of-justice enhancement that he received for absconding to Mexico for nearly eight years before sentencing. He argues, however, that this is an "extraordinary" case where an acceptance-of-responsibility reduction was also appropriate because he "attempted to right the wrong" by voluntarily surrendering to Mexican police. We disagree.

If Sandoval's case is "extraordinary," it is because of the magnitude of his obstruction, not of his penitence. His absconsion was neither an "isolated incident" nor "early in the investigation." *See Honken*, 184 F.3d at 968. It was a nearly eight-year flight from justice that occurred post-plea. Meanwhile, the extent of his acceptance of responsibility is hardly overwhelming: though he pleaded guilty and ultimately turned himself in, Sandoval points to little else that would clearly entitle him to this reduction. *See Chappell*, 69 F.4th at 494. Accordingly, the district court did not clearly err in finding that Sandoval's case is not one of the "extremely rare and highly exceptional" instances where an obstructionist defendant merits an acceptance-of-responsibility reduction. *See Smith*, 665 F.3d at 957.

**IV.**

For the foregoing reasons, we affirm Sandoval's conviction and sentence.

_____