# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3783

_____

United States of America

*Plaintiff - Appellee*

v.

Jon Thomas Kucharo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: September 27, 2024
Filed: February 11, 2025

_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

After the district court[1] denied Jon Thomas Kucharo's motion to suppress evidence gathered in state court warrant searches of his Econoline van and cell phone, he conditionally pleaded guilty to transportation and receipt of explosives with intent,

_____

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

and unlawful receipt and possession of destructive devices, in violation of 18 U.S.C. § 844(d) and 26 U.S.C. §§ 5841, 5845, and 5861. Varying upward, the court sentenced Kucharo to 108 months imprisonment. Kucharo appeals, arguing the district court (i) erred in denying his motion to suppress evidence recovered as a result of the second warrant search of his van, and (ii) erred at sentencing in determining that a state court conviction for a state law harassment offense committed on the same day he committed the federal explosives offense was not relevant conduct, which resulted in a higher criminal history category and advisory guidelines range. Concluding there was no Fourth Amendment violation and any procedural sentencing error was harmless, we affirm.

## I. Background

On June 22, 2022, Kucharo called an Iowa county prosecutor assigned to his pending criminal cases and threatened him, saying, "I'm gonna . . . come get ya real soon . . . I'll wait outside that door for you . . . I will eliminate you." For that call, Kucharo was convicted in Scott County District Court of first-degree harassment in violation of Iowa Code § 708.7; he received a two-year sentence. That same day, Davenport Police and Fire Department investigators, responding to a reported explosion, found a pontoon boat and trailer parked at the curb on a residential street, damaged by a homemade pipe bomb. The pipe bomb explosion resulted in a multi-county investigation and this federal indictment and conviction.

Two persons living near the damaged boat reported that Kucharo, an old classmate, was upset with them. Witnesses also reported seeing a man matching Kucharo's description running away shortly after the explosion. Investigators learned that Kucharo had threatened his defense attorney in Coralville, Iowa. They received photographs Kucharo sent the attorney showing Kucharo in front of a blue Econoline van, next to containers of black powder and a pipe bomb consistent with the device found near the explosion. They learned the blue van in the photographs was

registered to Kucharo's deceased father and was located near the address listed on his driver's license. The threatened attorney provided Kucharo's phone number and photos of Kucharo standing in front of a blue Econoline van and multiple pipe bombs. Coralville police shared text messages and videos from this phone number in which Kucharo made death threats to local judges and prosecutors, waving a pipe bomb.

Based on this information, investigators went to Kucharo's registered address on West 12th Street, saw the van parked two houses away, detained Kucharo as he exited the residence, seized the keys to the van and his cell phone, and conducted a warrant search of the van, finding the container of black powder seen in one of Kucharo's images. The officers retained the keys and left the van where they found it, in a public parking lot. A manual search of the cell phone revealed a message stating Kucharo intended to "annihilate" various persons and videos of him working on pipe bombs in the van. Detective Richard Niesen applied for and obtained a state court warrant to search the "[p]hone that was on the person of Jon Thomas Kucharo."

On June 23, Davenport Detective Gordon Morse, an FBI regional bomb squad member who was out of town on June 22, joined the investigation. Morse learned that security footage captured a person wearing a distinct U.S. flag t-shirt walking near the explosion and that investigators had seen that shirt during the June 22 search but left it in the van. Morse concluded a second search of the van was needed and on June 28 applied for a second warrant to search the 12th Street residence and blue Econoline van for explosive devices, other weapons, and a long list of components, containers, and tools used in the manufacture of explosive devices. In the supporting affidavit, Morse described "[e]vidence and information located after the search . . . [that] Officers conducting the search were not aware of . . . when the original searches were conducted and would require access to the residence and van in an attempt to locate the evidence." Morse further averred:

After the search, the van was left secured where it was parked and [Kucharo] has been incarcerated at the Scott County Jail since that time. On 06/27/22 the van was relocated still parked in the same location and impounded pending a new search warrant request. It has since been located in a secured garage at the Davenport Police Department.

A Scott County Magistrate Judge issued a warrant to search the residence and Econoline van on the afternoon of June 28. The warrant was executed and officers searched the van at the police department, where it had been towed while Morse sought the warrant. Officers found a hidden area near the ceiling of the van containing additional pipe bombs similar to the bomb that exploded on June 22, firearms, and in a separate area, a t-shirt with a U.S. flag pattern like the shirt worn by the man seen running from the boat bombing. It appeared that Kucharo had been living in the van, consistent with what occupants of the nearby residence reported.

## II. Procedural History

Kucharo was convicted of first-degree harassment in Scott County District Court on October 4, 2022. He received a two-year sentence that was discharged in May 2023. Following the federal indictment, he moved to suppress evidence discovered in the second warrant search of his van, arguing the warrant was invalid because Morse's averment in the supporting affidavit that the van was secure after the June 22 search was knowingly or recklessly false, and without that false statement, the warrant application failed to establish probable cause to search the van. The district court denied the motion, concluding that Morse's "secured" averment was "arguably not false or misleading at all," and in any event, the affidavit provided "ample reason to believe Kucharo was involved in the Spring Street bombing and that evidence would be found . . . [in] the Econoline van" without this allegedly false

statement. Kucharo then conditionally pleaded guilty to two Counts, preserving the right to appeal this suppression ruling.[2]

The October 12, 2023 Presentence Investigation Report ("PSR") classified Kucharo's state harassment conviction as not part of "the instant offense" and therefore not relevant conduct as defined in USSG § 1B1.3. See USSG § 4A1.2(a)(1) & comment. (n.1). Because the state offense was not relevant conduct, Kucharo received criminal history points for the conviction, resulting in a criminal history category of V instead of IV and an ultimate advisory guidelines range of 84 to 105 months imprisonment instead of 70 to 87 months imprisonment. Twelve days before the December 18 sentencing hearing, the Probation Officer advised the district court that, based on the parties' PSR objections, the outstanding issues included whether criminal history points are properly attributable to the state harassment conviction, the proper total criminal history score, and the appropriate advisory guidelines range. After considering both sides' position at sentencing, the district court agreed with the PSR, concluding the state harassment offense was not relevant conduct because it was a "severable, distinct offense," so the conviction received 3 criminal history points and the ultimate advisory guidelines range was 84 to 105 months. Varying upward, the court sentenced Kucharo to 108 months imprisonment, noting that the relevant conduct determination was not "material to [its] ultimate sentencing decision."

### III. The Suppression Issue

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular

---

[2]The district court also denied Kucharo's motion to suppress evidence derived from the warrant search of his cell phone. Kucharo does not appeal that ruling.

place." United States v. Espinoza, 9 F.4th 633, 635 (8th Cir. 2021). "[S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. 213, 236 (1983) (cleaned up). We review probable cause determinations *de novo*, according "great deference" to the issuing magistrate's conclusion. United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009). Only if the affidavit submitted in support of a warrant application "could not have supported the existence of probable cause will suppression be warranted." United States v. Miller, 11 F.4th 944, 953 (8th Cir. 2021) (quotation omitted), cert. denied, 142 S. Ct. 2796 (2022).

In Franks v. Delaware, resolving "an important and longstanding issue," the Supreme Court held that "a defendant in a criminal proceeding [has] the right . . . subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant." 438 U.S. 154, 155 (1978). However, noting the "presumption of validity with respect to the affidavit supporting the search warrant," the Court explained:

> To mandate an evidentiary hearing, the challenger's attack must be . . . supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false . . . accompanied by a statement of supporting reasons. . . . Allegations of negligence or innocent mistake are insufficient. . . . Finally . . . if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Id. at 171-72; see United States v. Conant, 799 F.3d 1195, 1199 (8th Cir. 2015), cert. denied, 577 U.S. 1161 (2016). Absent "a strong threshold showing of deliberate

falsehood or reckless disregard for the truth, . . . the suppression motion turns on the warrant's facial validity." Smith, 581 F.3d at 695.

Kucharo moved to suppress evidence seized in the second search of the Econoline van, arguing that photos of the van make clear it was not secured from access by outsiders between June 22 and June 28. "Therefore, the statement of Detective Morse in [his supporting affidavit] that the van had been left secured was made either knowingly or intentionally or with reckless disregard for the truth. In either event, Mr. Kucharo is entitled to a Franks hearing." The district court denied the motion after an evidentiary hearing at which two law enforcement officers involved in the investigation and in obtaining the van search warrants testified. Kucharo appeals that ruling. "We review the district court's factual findings on a Franks challenge for clear error and its legal determinations *de novo*." United States v. Freeman, 625 F.3d 1049, 1051-52 (8th Cir. 2010) (quotation omitted).

On appeal, as in the district court, Kucharo argues that Morse falsely and recklessly averred that the van was secured after the initial June 22 search. The statement was false, he argues, because the van was missing windows, easily accessible to the public, and likely tampered with after the first search. It was reckless, he adds, because Morse "made the statement without having looked at the van." The district court concluded that Morse's description of Kucharo's van as secured was "arguably not false or misleading . . . and certainly not to the degree that would rise to the level of deliberate or reckless disregard for the truth." We agree.

Morse testified that he used the word "secure" because "[t]hat's the condition as it was relayed to [him] from the officers that did the original search." He denied the statement was knowingly or intentionally false when made, and there is no evidence to the contrary. The context of Morse's use of the word "secure," which can have different meanings in different circumstances, is critical in determining whether he made the statement with reckless disregard of the truth.

Morse was seeking a second warrant to search the van six days after the first warrant search because later discovered evidence suggested the first search was not properly done. A magistrate judge had determined there was probable cause to issue a warrant for the first search. That is not at issue. But six days had passed with the van parked in a public parking lot. If the evidence supporting issuance of the warrant on June 22 had substantially changed, then that evidence "would have gone stale." United States v. Tenerelli, 614 F.3d 764, 770 (8th Cir. 2010), cert. denied, 562 U.S. 1264 (2011). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). Here, if Kucharo was not in custody and was left in possession of the van keys during those six days, the likelihood that bombs and bomb-making evidence would still be in the van on June 28 would be substantially diminished. Thus, in focusing on whether there was probable cause to issue the second warrant, it was critical to show that the van was "secure" from Kucharo -- he was in custody and the van keys were in the custody of the Scott County Sheriff.

On the other hand, whether someone else had broken into or accessed the van while it was parked unattended in a public parking lot did not affect whether Morse's affidavit provided probable cause to issue a second warrant, though such unlawful access might affect what would be discovered on execution of the warrant. The affidavit accurately told the issuing magistrate that the van was in a public parking lot, and thus accessible to unlawful access. The mere possibility that someone could have accessed Kucharo's vehicle after the June 22 search does not defeat probable cause -- "probable cause is about fair probabilit[ies], not near certainties." United States v. James, 3 F.4th 1102, 1105 (8th Cir. 2021) (quotation omitted), cert. denied, 142 S. Ct. 1352 (2022).

Even if the situation could have been more thoroughly described, we have repeatedly held that "[n]egligence or innocent mistake is not enough to establish a Franks violation" and a "showing of deliberate or reckless falsehood is not lightly

-8-

met." Freeman, 625 F.3d at 1050-51. Morse's use of the word 'secure' was a "minor discrepancy [that] is insufficient to establish that the attesting officer acted deliberately or recklessly in making the statements." United States v. Frazier, 280 F.3d 835, 846 (8th Cir.), cert. denied, 537 U.S. 911 (2002).

We also agree with the district court that even if Morse's statement was false or misleading, Kucharo failed to establish a Franks violation because the unchallenged statements in Morse's affidavit establish "a fair probability" that evidence relevant to the boat explosion and to the investigation of unlawful explosives manufacturing would be found in Kucharo's van. This includes: (1) residents living near the explosion reported they had "an issue" with Kucharo; (2) pictures of Kucharo in front of a blue Econoline van and multiple pipe bombs with containers of black powder sitting next to them, one bomb being consistent with the bomb found at the site of the explosion; (3) the blue van was registered to Kucharo's deceased father and found two houses away from Kucharo's registered address; (4) shortly after the explosion, witnesses mentioned seeing a man matching Kucharo's description running away from the scene; (5) videos and messages of Kucharo threatening local officials; and (6) a 2021 complaint to the police that Kucharo was in a dispute with other people, wanted to "take them out," and was burned while making a homemade explosive device.

Kucharo argues that "the unsecured nature of the van undermined the entire basis for the warrant" because the pipe bomb explosion was widely publicized, making it more likely that members of the public would try to access the van after the initial search. But he cites no cases, and we are aware of none, holding that there is no probable cause unless the issuing magistrate knows the place or thing to be searched is inaccessible to the public.

We conclude the district court did not err in denying Kucharo's motion to suppress evidence seized in the second warrant search of the van.

## IV. The Sentencing Issues

Kucharo argues the district court committed procedural sentencing error -- incorrectly applying the Sentencing Guidelines -- when it rejected Kucharo's argument that the state harassment conviction was relevant conduct, improperly increasing his criminal history score and advisory guidelines range. The Guidelines provide that relevant conduct includes "all acts . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). "Conduct underlying a prior conviction is not relevant to the instant offense if the former conviction was a severable, distinct offense from the latter." United States v. Weiland, 284 F.3d 878, 881 (8th Cir. 2002) (quotation omitted). We review that fact-intensive issue for clear error, giving due regard to "the district court's sentencing expertise and greater familiarity with the factual record." United States v. Hernandez, 712 F.3d 407, 409 (8th Cir. 2013) (quotation omitted).

At sentencing, the district court gave two reasons for rejecting this contention:

> [The prior state conviction] involved harassment in the first degree, and the victim was a state prosecutor, Mr. ____. The offense was committed in a different way. The elements of the offense[s] are different. Although they happened on the same day, it wasn't part of a continuous criminal episode with a common modus operandi or the same victims or the same conduct or anything like that. It was two distinct events, so I do think the PSR got it right in giving that conviction 3 criminal history points.

> That leads me, though, to my second conclusion. This particular debate . . . is not going to change my sentence anyway. . . . I take the guidelines seriously. I have to. But I'm a lot more interested in the substance of the conduct and the 3553(a) factors than I am about hypertechnical perfection when it comes to the guidelines range. So whether that should count as 3 criminal history points or not, whether

-10-

Mr. Kucharo's criminal history category V or category IV is not going to be material to my ultimate sentencing decision.

It seems rather clear to us that the first-degree harassment of a county prosecutor and pipe bombing a pontoon boat parked in an urban residential neighborhood were severable, distinct offenses, despite being committed on the same day. But we conclude we need not resolve this relevant conduct issue because any guidelines sentencing error was harmless.

Errors in determining the advisory guidelines sentencing range are subject to harmless error analysis, and "we have encouraged district courts in resolving a fact-intensive Guidelines issue to state whether its resolution of the issue affected its ultimate determination of a reasonable sentence." United States v. Shuler, 598 F.3d 444, 447 (8th Cir.) (quotation omitted), cert. denied, 560 U.S. 975 (2010). "[A]n incorrect application of the sentencing guidelines is harmless error when the district court specifically identifies the contested issue and potentially erroneous ruling, sets forth an alternative holding supported by the law and the record in the case, and adequately explains its alternative holding." United States v. Greer, 57 F.4th 626, 630 (8th Cir. 2023) (quotation omitted). A district court's incorrect calculation of the Guidelines is harmless when the court "indicates it would have alternatively imposed the same sentence even if a lower guideline range applied." United States v. Holmes, 87 F.4th 910, 914 (8th Cir. 2023) (quotation omitted).

Here, at sentencing, the district court explicitly stated that the relevant conduct issue "is not going to change my sentence anyway . . . [whether the state offense] should count as 3 criminal history points or not, whether Mr. Kucharo's criminal history category V or category IV is not going to be material to my ultimate sentencing decision." In explaining the sentence it was imposing, the court carefully discussed many of the 18 U.S.C. § 3553(a) factors, focusing particularly on the nature and circumstances of Kucharo's offense and stating:

-11-

I agree in this instance with [government counsel] that the guidelines do not capture the severity of this offense, the detonating a bomb in a public place, the threat that it would have constituted to the victims, the damage that could have been caused if anybody had been around at that time -- all of that is incredibly serious.

"We have previously found that similar explanations rendered a purported [Guidelines] error harmless." See Holmes, 87 F.4th at 914 and cases cited.

Kucharo argues "it is not clear that the [relevant conduct] error was harmless" because, if the advisory guidelines range is "correctly calculated" as 70-87 months imprisonment, rather than 84-105 months, the court's three-month upward variance becomes a 21-month variance. That substantial variance would be unreasonable because Kucharo's "undoubtedly serious and frightening" offense conduct was the product of an undiagnosed mental health condition and a sentence greater than necessary to provide him mental health evaluation and treatment in prison. This is an argument that the sentence is substantively unreasonable, an issue not included in Appellant's Statement of the Issues Presented for Review. See Fed. R. App. P. 28(a)(5), which we strictly enforce. In any event, even if the issue is preserved, given the district court's careful weighing of the § 3553(a) sentencing factors, the contention does no more than show that Kucharo disagrees with the district court's weighing of those factors, which is not enough to demonstrate an abuse of the district court's substantial sentencing discretion. See United States v. Long, 906 F.3d 720, 727 (8th Cir. 2018), cert. denied, 140 S. Ct. 464 (2019); United States v. Neri, 73 F.4th 984, 989 (8th Cir. 2023).

For the foregoing reasons, the judgment of the district court is affirmed.
_____